Doane v. Hadlock.

# COUNTY OF HANCOCK.

ELIJAH S. DOANE & als. versus EDWIN HADLOCK, Ex'r.

In the interpretation of wills the great object of courts is to give full effect to .the intention of the testator. But a will, to be effectual, must be executed in conformity with the requirements of the statute.

To give effect to an interlineation made by the testator, without a new attestation, would be to disregard the statute requirement. On the other hand, to hold the whole will void for that cause, would be to defeat the intention of the testator. Such interlineations are therefore disregarded, and the will approved according to the original draft, as if nothing had been done to it.

Interlineations, made by a stranger, when the original legacy is known, will likewise have no effect, and the will will be approved as it originally stood.

Interlineations, made by the legatee himself, will at most only avoid the legacy so altered. The other bequests will not be destroyed thereby.

ON REPORT from Nisi Prius, HATHAWAY, J., presiding.

This was an appeal from a decree of the Judge of Probate for the county of Hancock, allowing and decreeing probate of the will of Samuel Hadlock, late of Cranberry Isle.

By the ninth bequest the testator gave his daughter Abigail C. one house and ten acres of land, for her portion and share of his estate "in full."

The tenth bequest was in the words following, "I further give my daughter Abigail C. five dollars more." Evidence was introduced tending to establish the fact that the tenth bequest was inserted after the execution of the will, and it was contended that the entire instrument was thereby vitiated and made void.

Wiswell & Knowles, for the appellants, contended, that the insertion of the tenth bequest, by the testator, after the execution of the will, rendered the whole will void; it being a material alteration. R. S., c. 92, § 2; Homer v. Hollis, 11 Maine, 309; Adams v. Frye, 3 Met. 103, 104; Brackett v. Mountfort, 11 Maine, 115; Bennett v. Thorndike, 1 Maine, 73.

*Kent & Robinson,* for defendants, contended:—

That the will was not rendered void by the addition of another bequest, after its execution by the testator; and cited to this point, the following, among other authorities. *Wheeler* v. *Bent,* 7 Pick. 61; *Larkins* v. *Larkins,* 3 Bos. & Pull. 50; *Short* v. *Gastrell,* 4 East, 419; 13 East, 526, 537; 2 Bos. & Pull. 650.

The counsel also referred to the case of *Greeville* v. *Tylee,* in 24 Eng. Com. Law and Equity Rep. (Little & Brown's ed.) 53; also to the case of *Goods of Redding* or *Higgins,* 1 Eng. Com. Law and Equity Rep. (Little & Brown's ed,) 624. In the will, originally signed C. Higgins, the testator afterwards changed her name to Redding, and erased the name and wrote Redding. The second signature was not attested. Probate was granted of the will as it was originally executed.

See also *Simmons* v. *Rudall,* 2 Eng. Law & Equity Cases.

APPLETON, J. — This was an appeal from the decree of the Judge of Probate for the County of Hancock, allowing and decreeing the probate of the will of Samuel Hadlock. The validity of the will upon appeal was established by the verdict of the jury.

It appears from the conclusion of the report of the case, that the Court are first to consider the instructions of the presiding Judge to the jury, and if they are found to be correct, judgment is to be rendered upon the verdict, without reference to the inquiry whether the appeal was well taken or not.

By the 9th bequest in the will, the testator gave to his daughter Abigail "one house and ten acres of land, agreeable to a deed from me to her, for her portion and share of my estate in full," &c.

The 10th bequest is in these words: "I further give my daughter Abigail C. five dollars more."

Evidence was offered and received at the trial tending to show that the tenth bequest was interlined by the testator after the due execution of the will, and it was insisted by the

counsel for the appellants, if such was the fact, that the entire will was void.

In reference to this point the Court instructed the jury, "that if the testator, during his life and after the execution of the will and the attestation of the three witnesses, inserted himself the tenth bequest, (which was the alteration alleged,) *that such an insertion would not render the will void* and prevent its probate and allowance. But that if inserted after the same execution by any other person, with a fraudulent intent, or for the purpose of giving additional strength to the will, it would render the whole void."

The great object of courts in all cases is to give full effect to the intention of the testator. But the will to which effect is to be given, must be one, which is in conformity with the requirements of the statute. In case of an interlineation by the testator, without a new attestation, if effect should be given to such interlineation, the statute of wills, which requires an attestation by three subscribing witnesses, would be disregarded. If, on the other hand, the will were for that cause to be held entirely void, it might defeat the intentions of the testator.

To avoid this dilemma, of disobeying the mandate of the Legislature, or of defeating the intentions of the testator, the Prerogative Court, which in England has jurisdiction over the probate of wills, in case of an erasure or interlineation of a will after its due attestation, disregard the same, and probate the will according to its original draft. In *Goods of Sir Charles Ibbotson*, 2 Curteis, 337; In *Goods of James Beavan*, 2 Curteis, 369. It seems well settled that to burn, tear, or obliterate a part of a will is a nullity, if done *sine animo revocandi* and only for the purpose of making some new disposition or alteration; and if from want of compliance with the statutory regulations such disposition or alteration cannot take effect, then the tearing, burning, or obliterating in no degree revokes the will, but it remains in full force as if nothing had been done to it.

The maxim of the law is "*tunc prius testamentum rumpitur*

*cum posterius rite perfectum est.*" In *Locke* v. *James,* 11 Mees. & Wells. 901, a testator, by his will duly executed, devised certain real estate to R. N. in fee, subject to and charged with an annuity of *six* hundred pounds a year, which he gave his daughter E. J. for her life, with powers of distress and entry on the devised estates in case the annuity was in arrears. He subsequently erased with his pen the word *six* and inserted over it the word *two,* leaving however the word *six* legible in each place where it occured, and on the same day he added a memorandum or codicil to his will in the presence of one witness only, recognizing the above alterations. It was held that the substitution of *two* for *six* hundred under these circumstances was inoperative and that E. J. retained a legal interest in the annuity of £600. "The substitution in the will," says Parke, B., "was inoperative, having been made after the subscription of the witnesses, not in their presence, and without republication; and the substitution for the purpose of giving effect to which, the erasure was made, thus failing, the law is clear that the erasure fails also. It is treated as an act done by mistake, *sine animo cancellandi.* What the testator in such case is considered to have intended is a complex act, to undo a previous gift for the purpose of making another gift in its place. If the latter branch of his intention cannot be effected, the doctrine is, that there is no sufficient reason to be satisfied that he meant to vary the former gift at all." These views have received the sanction of the English courts in many other cases. *Larkins* v. *Larkins,* 3 B. & P. 16; *Short* v. *Smith,* 4 East, 419; *Winsor* v. *Pratt,* 2 B. & B. 652; *Wood* v. *Wood,* 1 Phill. 357.

So it has been repeatedly held in this country that an interlineation, after the due execution of a will, by the testator would not have the effect of canceling or revoking the entire will. The will would remain as before the ineffectual alteration. In *Jackson* v. *Holloway,* 7 Johns. 395, the testator in his will made bequests of all lands of which he was then possessed, but subsequently becoming seized of other land, he altered his will by interlineation so as to make his devise ex-

tend to all lands of which he should die seized. It was held that the erasures and interlineations not being attested by three witnesses could not operate, but that they did not destroy the original devise, and that the subsequently acquired lands descended to the heirs at law. In *Wheeler* v. *Bent*, 7 Pick. 61, it was held that the interlineation of a legacy, after the execution of the will by the scrivener under the direction of the testator, would not make the will void.

If the interlineations were made by a stranger, they would not destroy the will and render it void. In *Smith* v. *Fenner*, 1 Gall. 170, STORY, J., says, "if the interlineation be made by a stranger and the original legacy be known, it will have no legal effect, and the legacy will be still recoverable and ought to be proved as it originally stood. If made by the legatee himself at most *in odium spoliatoris*, it will only avoid the legacy so altered, but it cannot destroy other bequests in the will either to the legatee himself or to others. This is not like the case of a contract where the alteration of a security by the obligee himself avoids it. The legatees all take by the bounty of the testator; the object is to carry his will into effect and not merely to attend to the merits or demerits of those, who claim under it." That an alteration of a will by a stranger will not destroy it, seems to be inferable from *Jackson* v. *Malin*, 15 Johns. 298.

The only exceptions to which the counsel for the appellants have called our attention or upon which they rely, relate to the inquiry whether a will altered by the testator after execution is for that cause void. It has been seen that it is not so regarded by the decisions of courts in England and in this country. There is nothing in our statute of wills in any degree in conflict with these adjudications. There is no allegation by the excepting counsel that the rulings of the presiding Judge in other respects were incorrect, and in this, they being found to be in accordance with law, judgment by agreement of parties must be entered upon the verdict.

The rulings, if erroneous in the latter clause of the instruction to which reference has been made, were so by being

too favorable to the appellants; but of that they cannot complain.

Whether the question of erasure or interlineation can be raised after probate, and whether upon appeal it must be specifically determined by a jury, and when and how it is to be tried and determined, is not material to the present inquiry. The interlineation if established would not affect the appellants. Unless, if proved, its effect would be to render the will void, it is immaterial to them whether it be in or out of the will. 　　　　　　　*Motion and exceptions overruled.*

TENNEY, C. J., and HATHAWAY, MAY and GOODENOW, J. J., concurred.