In the matter of the Probate of the Last Will and Testament of WILLIAM A. PENNIMAN, deceased.

An appeal lies to the supreme court from a judgment of a district court, affirming a final order of a probate court, admitting a will to probate.

On May 26th, 1871, William A. Penniman, now deceased, made his last will and testament in due form of law. On the 21st day of August, 1871, he undertook to make certain alterations in his will by means of what he styled erasures and interlineations,—the so-called " erasures" being made by drawing a pen through certain words and clauses, and the " interlineations" by inserting certain words, figures, and clauses between, or in, the lines. All of these additions and alterations are in a handwriting different from that of the original will, and apparently in the handwriting of the testator. The erasures and interlineations are so made that there is no difficulty in reading the will as it was originally written. The *in testimonium* clause, the testator's signature to the original will, the

attestation clause, and the signatures of the subscribing witnesses, together with a memorandum in the handwriting of the testator as to the erasures and interlineations, and the signatures of the subscribing witnesses thereto, are as follows, both as to text, and the position which each occupies relatively to the other upon the will, viz.:

"*In witness whereof,* I, William Andrews Penniman, have to this my last will, written on two sheets of legal cap paper, subscribed my name, and set my seal, this twenty-sixth day of May, A. D. one thousand eight hundred and seventy-one.

Subscribed by the testator in the presence of each of us, and sealed by him, and at the same time declared by him to us to be his last will and testament; and thereupon we, at the testator's request, and in his presence, sign our names hereto as witnesses, this 26th day of May, 1871, at Minneapolis, Minnesota.

WM. A. PENNIMAN. [SEAL.]

The erasures and interlineations made by Wm. A. Penniman, this the 21st day of August, 1871, and witnessed by J. K. Sidle and H. G. Sidle.

H. G. SIDLE.
J. K. SIDLE.

T. R. HUNTINGTON, Minneapolis, Minn.
JNO. S. WALKER, Minneapolis, Minn."

The testimony of the subscribing witnesses, the Sidles, went to show that they were requested to witness the erasures and interlineations only,—and further, that they were not made aware of what, or where, such erasures and interlineations were. *Held,* that the erasures, interlineations and additions to the will were not valid as alterations thereof. *Held,* that the will was entitled to probate as originally written.

The testator, having duly executed his will, subsequently altered it by cancelling certain portions and substituting other provisions in lieu of those cancelled, in the manner described in the opinion. The instrument, as thus altered, was propounded by the executors, and was admitted to probate by the probate court of Hennepin county, against the objections of the residuary legatee, who contended that the alterations were invalid and should be disregarded, and that the will should be admitted to probate as originally executed. The contestant having appealed to the district court for the same

county, the order of the probate court was there affirmed by a *pro forma* judgment, from which this appeal is taken.

F. R. E. CORNELL and GEORGE B. YOUNG, for Appellant.

H. R. BRILL, for Respondent.

*By the Court.*—BERRY, J.—As this case now stands, there is, *first*, an order of the probate court admitting the will in controversy to probate ; *second*, an appeal to the district court from so much of said order as admits to probate, as part of such will, certain interlineations appearing upon the face thereof ; *third*, a judgment of the district court, affirming the order of the probate court ; and *fourth*, an appeal from such judgment to this court.

Subdiv. 1, sec. 8, chap. 86, Gen. Stat., provides that "an appeal may be taken to the supreme court ＊ ＊ ＊ from a judgment in an action commenced in the district court, or brought there from another court, from any judgment rendered in such court." Assuming that the probable meaning of the latter clause is "or brought there from another court *by appeal* from any judgment rendered in such court," a question was raised as to whether the *order* of the probate court, admitting the will to probate, was to be regarded as a *judgment*, within the meaning of the statute quoted. Upon this question the counsel has filed a very satisfactory argument in which he has, in our opinion, succeeded in establishing the positions, that the proceeding in the probate court to obtain probate of a will is an action, and that the order of the probate court, admitting the same to probate, is a judgment within the meaning of the statute. The counsel well argues that the proceeding is an action, because it has all the essentials of an action, to-wit : it is a proceeding in a court, (a

court of record also,) in which the question of the validity of the will is litigated between the executor, or other person propounding the will, as *actor*, or party plaintiff, and all persons interested in contesting the will as parties defendant ; a proceeding in which the probate court has exclusive original jurisdiction of the subject matter ; a proceeding in which the controversy is to be conducted and determined according to legal principles, and in which the sentence of the probate court is final and conclusive against all the world, save only as appealable. (*Haven vs. Hilliard*, 23 *Pick.* 10.) The *order* of the probate court is to be regarded as a *judgment*, within the meaning of the statute, because it is the *final determination*, in that court, of an action, which may properly be said to be instituted to try and determine the issue as to the validity of the will. By whatever name it may be called, it is, in substance and effect, the *judgment* or *decree* of the court upon the matter submitted, and the only judgment or decree, the rendition or entry of which in the premises is contemplated by the statute.

The following are the only facts necessary to be stated for the purpose of presenting the questions material to the consideration of the merits of the case : On the 26th day of May, 1871, Wm. A. Penniman, now deceased, made his last will and testament in due form of law. On the 21st day of August, 1871, he undertook to make certain alterations therein, by means of what he styled erasures and interlineations ; the so-called " erasures" being made by drawing a pen through certain words and clauses, and the " interlineations" by inserting certain words, figures and clauses between or in the lines. All of these additions and alterations are in a handwriting different from that of the original will, and apparently in the handwriting of the deceased. The original will being submitted to the inspection of the court, it appears that the

erasures and interlineations are so made that there is no diffi-
culty in reading the will as it was originally written.   The *in
testimonium* clause, the testator's signature to the original will,
the attestation clause, and the signatures of the subscribing
witnesses, together with a memorandum in the handwriting of
the testator as to the erasures and interlineations, and the sig-
natures of the subscribing witnesses thereto, are as follows,
both as to text and the position which each occupies rela-
tively to the other upon the will, viz. :

" *In witness whereof,* I, William Andrews Penniman, have to
this my last will, written on two sheets of legal cap paper,
subscribed my name, and set my seal, this twenty-sixth day
of May, A. D. one thousand eight hundred and seventy-one.

" Subscribed by the testator in the presence of each of us, and sealed by him, and at the same time declared by him to us to be his last will and testament ; and thereupon we, at the testa-tor's request and in his presence, sign our names hereto as wit-nesses, this 26th day of May, 1871, at Minneapolis, Minnesota.

WM. A. PENNIMAN. [SEAL.]

The erasures and inter-lineations made by Wm. A. Penniman this the 21st day of August, 1871, and witnessed by J. K. Sidle and H. G. Sidle.

H. G. SIDLE.
J. K. SIDLE.

" T. R. HUNTINGTON, Minneapolis, Minn.
" JNO. S. WALKER, Minneapolis, Minn."

The testimony of H. G. and J. K. Sidle, the persons whose
names are subscribed to the memorandum, is as follows, so
far as important :

I was well acquainted with William A. Penniman, now
deceased.   I knew the deceased for about twelve or fourteen
years.   That is my name subscribed to the instrument as a
witness.   The subscription was made in the first national

banking office in the city of Minneapolis. It was made on the 21st day of August, 1871, the same day which it bears date. I signed my name as a witness to the same at the request of the decedent. The circumstances were as follows: I believe we had the will in charge; it was deposited in the bank for safekeeping previous to this time. Dr. Penniman, the decedent, came in and asked for the will. We delivered the will to him, and then he went to the desk on the outside of the bank counter and made some alterations—what I don't know— saw him using a pen. Then he asked my brother, Henry G. Sidle, and myself, to witness what he had been doing. I can't say what he wrote. He read this part: "The erasures and interlineations made by Wm. A. Penniman this the 21st day of August, 1871, and witnessed by J. K. Sidle and H. G. Sidle." I signed it at his request, as a witness, in his presence, and in the presence of H. G. Sidle, the other subscribing witness to the same. I saw H. G. Sidle sign his name as a witness, and know that he did so at the request of the testator. He was at the time of sound mind, memory and understanding, and under no restraint, to my knowledge.

(On cross-examination.) I don't remember as he read the alterations. He spoke and said he had made alterations in the will, but did not explain the nature of the alterations, at least this is my impression. The will was then left in the bank for safekeeping, and remained there until it was delivered to Mr. Cutter, one of the executors. It was kept in the safe. I and my brother, H. G. Sidle, and his son Willie, have access to the safe—no one else.

(By the Court.) When he asked us to witness it, he spoke of it as his will, and of the alterations, and requested us to witness it.

(Signed.)                                    J. K. SIDLE.

(Instrument shown the witness, purporting to be the last will and testament of deceased, and now offered for probate.) Witness states:

That is my signature. I was acquainted with Dr. W. A. Penniman during his lifetime; knew him about eight years previous to his death. My signature to this instrument as a witness was made at the banking office of the First National Bank, in the city of Minneapolis. It was some time last fall —can't tell the exact time. The deceased came into the bank, and got the will of my brother, J. K. Sidle, and went to the desk on the outside of the bank counter, and wrote there a spell, and then called me around to him and told me to witness a little alteration in his will. I said, " Doctor, are you changing ?" He said, " Yes, a little." I signed my name as a witness. I signed it in his presence and in the presence of J. K. Sidle, the other subscribing witness. At the time of executing the same I discovered nothing but that he was of sound mind, memory and understanding. He did not appear to be under any restraint. I had but little conversation with him at the time. I have no recollection as to whether I saw J. K. Sidle sign the instrument. He did not show me the alterations which he had made in the will, nor state to me what they were. The will was in the bank for some time. The deceased gave the will to my brother. The deceased showed where to sign my name. I signed it at the end of the instrument, at the end of his will, in the words following: " The erasures and interlineations made by Wm. A. Penniman, this the 21st day of August, 1871, and witnessed by J. K. Sidle and H. G. Sidle." I am acquainted with the handwriting of the deceased. It is my impression that the part of the will above quoted is in the handwriting of the testator. I should think the interlineations in will were in the

handwriting of the testator.  I have stated substantially all that transpired, as near as I can recollect.

(Signed,)                                        H. G. SIDLE.

The main question which arises upon the foregoing statement of the facts and testimony is, whether the so-called interlineations are valid and operative as a part of the will.  If, in the case at bar, the interlineations and additions are to be upheld as valid alterations of the original will, they operate in two ways:  First, directly and upon their face, as a testamentary disposition of property.  Second, indirectly, and for reasons to appear hereafter, as a revocation of a previous valid testamentary disposition.

The first inquiry will then be, can these interlineations and additions be upheld as a testamentary disposition of property ?  To secure the genuineness of wills, and the free exercise by testators of the right of testamentary disposition, sound policy requires such exercise to be strictly regulated and guarded.  For the testator this is important, in order that the disposing instrument may be *his* will, and not the will of some other person, and in order that his right of disposing of his own may be preserved.  Wills are a fruitful source of litigation, and of litigation from which the combatants often retire only after having exhausted themselves and the property in dispute   For the peace of society, then, as well as for the interest of the heirs and beneficiaries of a testator, it is also important that regulations should be prescribed, by following which a careful testator may reasonably hope to prevent any serious controversy as to the authenticity and validity of his will.   Hence, in accordance with the general spirit of the law upon this subject, our statute has prescribed the manner in which wills must be executed, and this in language so peremptory and explicit as to leave no doubt upon the point, that the general rule, which renders it indispensable that a will

Probate of Last Will and Testament of Penniman.

should be executed in strict compliance with the forms of law, is in force here. Section 5, ch. 47, Gen. Stat., enacts that " No will * * * * shall be effectual to pass any estate, real or personal, or to charge or in any way affect the same, unless it is in writing and signed at the end thereof by the testator, or by some person in his presence and by his express direction, and attested and subscribed in his presence, by two or more competent witnesses." Now, if the erasures, interlineations and additions in this instance are to be held valid, the result is that the original will, as such, is superseded by the (so to speak) new will, which has been made out of it by the alterations, and a re-execution or a new execution is required, just as a republication would be necessary in a like case, if publication of wills was required here, as in some countries. *Pringle vs. McPherson*, 2 *Brevard*, 289 ; 1 *Redfield on Wills*, 314-15, secs. 22, 23, 25.

The attestation of the original will is, of course, not an attestation of the will as altered, and if there is no other sufficient attestation of the will as altered, it cannot be sustained, since it is not attested as imperatively required by the statute. *Doane vs. Hadlock*, 42 *Me*. 72 ; *Jackson vs. Halloway*, 7 *Johns*. 399.

The only other attestation is that of the Sidles, and we think it affirmatively and clearly appears that this cannot be regarded as an attestation of the will. The testimony of the Sidles upon the hearing for probate, as well as the language of the attestation clause signed by them, (*Mundy vs. Mundy*, 15 *N. J. Eq.* 293,) and which is in the handwriting of the testator, shows conclusively that, both in the understanding of the testator and the witnesses, their attestation was at most an attestation of the erasures and interlineations only ; their attestation of such erasures and interlineations consisting of no more than the signing, at the testator's request, of

a memorandum, which had not been signed by the testator himself, and without any knowledge on their part of the number, or location, or nature of the erasures, interlineations, and additions. What was said by the witness J. K. Sidle in answer to the inquiry of the court, as it appears in his testimony is, we think, entitled to no weight as against the other testimony of himself and H. G. Sidle, and the statements of the memorandum. It is to be observed, too, that the integrity of wills would be greatly jeopardized, if attestations like that in this instance were to be upheld, either as a sufficient attestation of erasures and interlineations, or of the will as altered thereby; since, the erasures and interlineations not being pointed out or identified, any number of them could be made, at any time, under cover of this attestation.

For want of proper attestation, then, the interlineations and additions cannot be sustained as alterations or parts of the will. Neither can they be sustained as a revocation of the original will, or those portions thereof cancelled by erasure. Section 9, chapter 47, Gen. Stat., in language equally peremptory and explicit as that of section 5, just considered, provides that " no will, nor any part thereof, shall be revoked, unless by burning, tearing, cancelling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some will, codicil, or other writing, signed, attested, and subscribed in the manner provided for the execution of a will." And as the plainest intent to revoke will be ineffectual, if not manifested as the law requires, (2 *Am. Lead. Cases*, 5th *Ed.* 491–495, and cases cited; *Boylan vs. Meeker*, 4 *Dutcher*, 274; *Doane vs. Hadlock*, *supra*,) no explanation can be necessary to show that the interlineations and additions, with the memorandum, and the attestation of the Sidles, and the attendant circumstances, as they could only operate as a *revocation* by *some writing*, fall far short

of satisfying these provisions of the statute as to the manner in which such *writing* is required to be executed, ( 1 *Redfield on Wills*, 309–10, *note* 26,) and cannot, therefore, operate as a revocation thereunder.    *Laughton vs. Atkins*, 1 *Pick.* 535.

Again, if the interlineations and additions were to be upheld as valid alterations of the will, they would, as before remarked, indirectly operate as a revocation of a previous valid testamentary disposition, *i. e.* of the disposition made by the cancelled parts of this will, and this for the reasons following :

The cancellation or obliteration of a portion of a will is an equivocal act, and only *prima facie* evidence of a revoking purpose; evidence which may, therefore, be overcome by proof that it was not the testator's design to revoke; 2 *Am. Lead. Cas.* (*6th ed.*) 489–500, *and cases cited; Powell vs. Powell, Law Reports ;* 1 *Probate and Divorce*, 212 ; *Bethell vs. Moore,* 2 *Dev. and Bat.* (*Law,*) 316.

This is in accordance with the spirit of our statute, which expressly provides that the effect of the act of cancellation is to depend upon the fact that the act is done with the *intention to revoke.    Section* 9, *chap.* 47, *Gen. Stat.*

When a portion of a will is cancelled with a view to a new disposition of the property, and the proposed disposition fails to be carried into effect, the presumption in favor of a revocation by the cancelling will be repelled, and the will will stand as originally framed; 2 *Am. Lead. Cas.* (*5th ed.*) 501 ; *Short vs. Smith*, 4 *East*, 419 ; *Bethell vs. Moore, supra*, 318.

So when words or clauses are cancelled in order to substitute others, which fail for want of due authentication, the cancellation will be treated as relative and dependent, or, as is sometimes said, as subsidiary to the interlineation, and the devise or bequest will take effect as originally made ; 2 *Am. Lead. Cas.* (*5th ed.*) 502, *and cases cited.*

These propositions are based upon the idea and presump-

tion that the testator has made the cancellation with the view, and for the purpose of putting some other disposition of his property in place of that which is cancelled, and that there is, therefore, no reason to suppose that he would have made the change, if he had been aware that it would have been wholly futile; but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged, in the absence of any known and sufficient reason for changing them. *Short vs. Smith,* 4 *East,* 429; *Powell vs. Powell, supra;* 2 *Am. Lead. Cas.* 5th ed. 500.

Applying these principles to this case, the validity of the cancellation being dependent upon the validity of the interlineations and additions, if the latter are sustained, the cancellation is sustained and made effectual as a revocation of so much of the original will as is cancelled; while, if they are not sustained, the cancellation is not sustained, and there is no revocation.

With reference to this indirect operation of the interlineations and additions as a revocation, or a necessary element of a revocation, of those parts of the will cancelled by erasure, it is true, as before, that the interlineations and additions cannot be sustained, because, for patent reasons, they fail—in connection with the memorandum and attestation of the Sidles, and attendant circumstances—to comply with the positive requirements of section 9, before quoted. 2 *Am. Lead. Cas.* (5th ed.) 504.

These considerations also possess a further importance with reference to the *status* of the erasures. Having determined that the interlineations and additions cannot be upheld, it follows, upon the principles above laid down, that the erasures must fall also, notwithstanding they might operate as a *pro tanto* revocation if they stood alone. 1 *Redfield on Wills,* 326–7, § 44 *and note.*

The result of all this is, that the original will, as originally written, is entitled to probate. *Doane vs. Hadlock,* 42 *Maine,* 74. The judgment of the district court is accordingly reversed.