ELLEN O'MALLEY, Administratrix, *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

May 16, 1890.

**Negligence—Duty of Owner of Dangerous Machinery to Young Children.**—The owner of any machine which he knows to be dangerous to children too young to know the danger, and of too immature judgment or discretion to control their natural instinct to amuse themselves with anything that may attract them as a plaything, and which he knows or ought to know may attract them, and who knows it is so placed that it does attract them to play with it, is under a duty, as to such children, to exercise the degree of care which an ordinarily prudent person would use to prevent its injuring them.

**Same—Question for Jury.**—What that degree of care requires him to do is ordinarily a question for a jury.

**Same—Proof of Due Care—Use of Customary Precautions.**—While, in the case of its turn-tables and trucks standing on its tracks, by playing with which such children are injured, it is competent for a railroad company, in order to show that it exercised due care, to prove that it secured the turn-tables and trucks in the way customary with all railroad companies, such proof is not conclusive that due care was exercised.

**Same—Contributory Negligence of Parent—Pleading.**—Defendant, sued for injuries to a child through its negligence, denied, in its answer, the negligence charged, and alleged contributory negligence of the child and others who accompanied him. *Held,* this limited its right to prove contributory negligence to that pleaded, so that it could not prove negligence of the child's mother in allowing him to go upon defendant's grounds.

Other unimportant assignments of error disposed of. Evidence *held* sufficient to sustain the verdict.

Appeal by defendant from an order of the district court for Stevens county, *C. L. Brown,* J., presiding, refusing a new trial after a verdict of $3,000 for plaintiff, in an action for the negligent killing of her intestate, a child of six years.

*M. D. Grover* and *J. W. Mason,* for appellant.

*Spooner & Spooner,* for respondent.

v.43M.—19

GILFILLAN, C. J.   This is an action by an administratrix to recover for an injury causing the death of the intestate, through the negligence of the defendant.   Upon the trial there was no substantial conflict in the evidence as to the material facts in the case.   The uncontradicted evidence may be said to establish the following facts: The railroad of defendant runs through the village of Morris, in this state.   Upon one of the blocks of that village are located several of defendant's tracks, running through the block, its cattle-yard, elevator, coal-sheds, a shop for repairs, a turn-table, and, shortly before the accident, a round-house, but which had been burned down.   The turn-table was near the centre of the block, being 422 feet from the street bounding the block on the north, 578 feet from the street bounding it on the south, 225 feet from that bounding it on the east, and 125 feet from that bounding it on the west.   On the north side two tracks, running north and south, ran to the turn-table; on the south side, one track running in nearly the same direction, and, connecting with the main track, ran to the turn-table.   On one of the tracks running to the turn-table stood several sets of car-wheels, with the axles.   It seems to have been customary with defendant, for a considerable time before the accident, to leave car-wheels standing at that place.   The track on which they stood had a descending grade towards the turn-table.   The grounds were not inclosed, so that they appear to have been easily accessible to boys, and boys of all ages seem to have been accustomed to seek them for the purpose of amusing themselves with the turn-table and the wheels, by revolving the one and setting the other in motion along the track.   The defendant knew this, and had instructed its employes at work upon and about the grounds to drive the boys away whenever they came, and they had generally, though not always, done so, whenever they saw the boys there.   The turn-table, when not in use, was fastened with an iron latch let down into a socket.   One of the witnesses testified that any child, a boy of five or six years old, could raise out the latch.   The wheels were fastened to prevent them rolling with a chip or block, sometimes with a tie or piece of timber.   At the time of the accident in question three boys, two about nine years old each, and the deceased about six years old, went upon

the grounds, removed the chip or block put to fasten one set of wheels, and put them in motion towards the turn-table. Deceased placed himself in front of the wheels, endeavoring to stop them, but they pushed him back, so that he was caught between one wheel and one of the timbers of the turn-table, and crushed so that he died not long after. The turn-table was partly turned round, and must therefore have been unfastened. It may be taken as established by the evidence that the methods adopted for fastening the turn-table and the wheels were those ordinarily used by railroad companies.

The case is, in its main features, nearly analogous to *Keffe v. Milwaukee & St. Paul Ry. Co.*, 21 Minn. 207. The principal difference in the facts of the two cases is that in that case the turn-table was left unfastened, while in this, as the jury might from the evidence have found, though the turn-table was usually kept fastened, and perhaps was fastened on this occasion, and though the wheels were undoubtedly fastened, the fastenings were insufficient to prevent children who come within the protection of the rule in that case from easily removing them. The difference is not such as necessarily to take the case out of the rule; for if one who has on his own premises a dangerous machine, which he knows to be accessible to and resorted to by children of too tender years to know the danger, and of too immature judgment or discretion to control the natural instinct of a child to amuse itself with anything that may attract it as a plaything, is under a duty to exercise care to prevent injury to such a child, the fact that he uses some care is not of itself sufficient to absolve him from liability. The care he must exercise is that which an ordinarily prudent person would, under similar circumstances, use to prevent injury to such children. Whether in any particular case such degree of care has been used is, generally, a question for the jury. Whether any care is required of the owner of a machine, and, if so, what an ordinarily prudent person would do in the way of care, must depend upon the circumstances of the case. To impose the duty of care, the machine must be such that it is dangerous for very young children to play with or about it, it must be of such a character that such children would naturally be attracted to play with or about it, and it

must be where they are likely to come for that purpose, so that an ordinarily prudent person would anticipate that they might come for that purpose. If the owner, instead of preventing such children getting to it, relies, to prevent injury to them, upon fastening it so as to prevent their playing with it, it is evident that the character of the means used for fastening must be considered in determining whether he exercises the care required of him. If the means used make it impossible for such children to expose themselves to the dangers of the machine, of course the owner has done his duty. On the other hand, if such means have no tendency to prevent them so exposing themselves; if they are entirely futile, and leave the machine just as dangerous to such children as before,—it can hardly be said he has used the degree of care required of him. To illustrate, suppose the case of a turn-table so situated that the company is under a duty, in respect to very young children, to secure it so as to avoid as to them the danger which it must guard them against, to wit, that to which they are exposed by the revolving of the turn-table, and that the company adopts a means of securing it so simple and easy of removal that it furnishes no obstacle in the way of the children playing with and causing the turn-table to revolve. Such children, seeing others cause the turn-table to revolve, imitate such others, and do the same. They see others remove the fastenings; they imitate them, and do the same. Certainly, the mere fact that it used some fastening would not, without regard to the character of the fastening, absolve the company from liability. Whether the fastening used was such as an ordinarily prudent person would use to prevent injury to such children must be a question of fact for the jury.

As we held in the *Kolsti Case*, (*Kolsti* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 133, 19 N. W. Rep. 655,) it was competent, on the issue as to proper care, for the defendant to prove that it fastened the turn-table and the wheels in the way customary among railroad companies. But, although that evidence was proper for the jury to consider on that issue, it was not of itself conclusive. *Doyle* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 79, (43 N. W. Rep. 787.) For the common sense of the jury might inform them that the means ordinarily used for such purposes are not adequate to guard against the dangers

to be avoided; that, in respect to such dangers, the means of prevention used by railroad companies generally are not such as an ordinarily prudent person would use to guard against the same dangers,—in other words, that all railroad companies may be habitually negligent in respect to those dangers. There is, certainly, no conclusive presumption that they are not. We do not mean to intimate, in respect to the matter of fastenings in a case like this, that they must be such as to render it impossible for children to remove them, nor that the fact that in the particular case they were removed by such children necessarily makes a case of negligence. But they ought to be such (we are speaking of cases where very young children, to the knowledge of the defendant, have ready access to, and may be attracted by, turn-tables and car-wheels standing on the tracks) that an ordinarily prudent person would deem them sufficient to render it improbable that children within the rule would remove them.

The child was injured at the turn-table. The evidence indicates that the turn-table was partly turned. It is not clear that the injury was not in part caused by that condition. It was proper, therefore, for the court to admit evidence as to the manner of fastening it, and also to refuse to instruct the jury that its position and condition were immaterial.

The answer denied the alleged negligence of the defendant, and alleged that the death was caused "solely by the wrongful act, negligence, and carelessness of the deceased and others, who were wrongdoers and trespassers upon the premises of defendant, and who wrongfully, and without the knowledge of defendant, but contrary to its orders, were upon said turn-table and its premises, and set said axle and wheels in motion." This clearly refers only to deceased and the two boys who were with him. On the trial defendant offered to prove negligence on the part of the child's mother in permitting her child to go upon the defendant's grounds, and about the turn-table and tracks. This was excluded. Two requests of defendant to instruct the jury, based on the proposition that the mother was negligent, were refused. That, in case of injury to a child *non sui juris,* the contributory negligence of the parent is imputed to the child, was de-

cided in *Fitzgerald* v. *St. Paul, M. & M. Ry. Co.*, 29 Minn. 336, (13 N. W. Rep. 168.) That, under a general denial in an answer of an allegation of negligence on the part of the defendant, the latter may prove negligence of the plaintiff contributing to the injury complained of, was held in *St. Anthony Falls Water-Power Co.* v. *Eastman*, 20 Minn. 249, (277.) It may be assumed that, had defendant rested on its general denial of negligence on its part, the evidence offered would have been admissible. But a party, by pleading specifically, though it may not have been necessary for him to do so, may restrict his line of proofs to the specific matters pleaded. Thus, in many cases, a general allegation of title will admit proof of any title the party may have; whereas, if he plead a specific title, or one acquired in a particular way, he will be limited in his proofs to the particular title pleaded. And so if one charged with negligence, instead of relying upon what he might prove under a general denial, should specify the particular in which he claims plaintiff's negligence contributed to the injury, he would, no doubt, be limited in his proofs to the particular pleaded. Otherwise pleadings might be made misleading. As the issue was not presented by the pleadings, and as it does not appear that plaintiff, by consent, litigated it as though it were in the pleadings, the instructions refused were inapplicable, and were properly refused.

The evidence made the case a proper one for the jury, and, though the damages were large, they are not so excessive as to show that any improper motives influenced the jury.

Order affirmed.

DICKINSON, J., (*dissenting.*) I think that the condition of the turn-table did not constitute a ground upon which liability on the part of the defendant could have been found. The only circumstances to be considered in this connection were that the turn-table was left in such a position that the revolving track did not, perhaps, connect with either of the two stationary tracks, and that the table may have been unfastened. The fact that it was not fastened bears no proximate relation to the accident or injury, if it was not set in motion by the boys, but remained motionless and stationary. If it had been fast-

ened in the same position the results would have been the same. As to the position of the turn-table, it was not the duty of the defendant to leave it connected with one of these stationary tracks rather than with the other, or with either of them. It could not be connected with both tracks. This position had nothing to do with the boys coming there to play, or with their setting the wheels in motion. The probability that injury would result from leaving the turn-table in that position seems to me to have been too remote to allow culpable negligence to be assigned because of it. The act was blameless, unless that was to be reasonably apprehended. I see no justification for a conclusion that injury was more likely to occur from the turn-table being left in this position than if in any other position. For these reasons I think that the refusal of the defendant's eighth request was error.

COLLINS, J. I concur in the views of Justice Dickinson.