PETER J. BERG v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

July 14, 1905.

Nos. 14,242—(63).

**Negligence.**

Under the circumstances of this case, *held*, it does not conclusively appear from the evidence that defendant was free from negligence in the care of a turntable upon which a child was injured while playing with the same, having found it unfastened.

Action in the district court for Lac qui Parle county to recover $1,000 for personal injuries sustained by Oscar Berg, the infant son of plaintiff. The case was tried before Powers, J., and a jury, which rendered a verdict in favor of plaintiff for $200. From a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Albert E. Clarke* and *H. L. Hayden,* for appellant, cited: Keffe v. Milwaukee & St. P. Ry. Co., 21 Minn. 207; Kolsti v. Minneapolis & St. Louis Ry. Co., 32 Minn. 133; Emerson v. Peteler, 35 Minn. 481; Twist v. Winona & St. Peter R. Co., 39 Minn. 164; Haesley v. Winona & St. Peter R. Co., 46 Minn. 233.

*Frank Palmer,* for respondent.

LEWIS, J.[2]

The station grounds at Madison are three hundred feet wide and one thousand feet long, located at the south end of the platted portion of the village. Defendant company constructed a turntable on the southerly side of the station grounds, at a point twenty-six rods from the nearest highway. The turntable was used by defendant during the night only for the purpose of turning the engine of the passenger train arriving at Madison at midnight and departing three or four hours later, and on those occasions it was operated by a train crew. As originally constructed, the table was provided with a steel frame, which formed a part of the turntable, and when closed the frame was thrown forward by a lever which was bolted with a padlock. This fixture became bent, and was removed and sent to the repair shop at Minneapo-

[1] Reported in 104 N. W. 293.     [2] START, C. J., absent.

lis, and a temporary device substituted while it was being repaired. The substituted fixture consisted of a heavy iron bar, from the center of which projected a short arm, and was called the "link and wedge fixture." When the bar was placed along the rails, across the joint, the link or short arm projected through the joints made where the rails came together, and an iron wedge was inserted in the link on the opposite side of the joint. When so locked the turntable could not be moved as a merry-go-round without taking out the wedge and removing the fixture. July 24, 1903, plaintiff's son Oscar, eight years of age, accompanied by two other boys a year or two older, went to the turntable, and, finding it unfastened, one of them commenced to turn it around; and while it was in motion Oscar attempted to jump on it, and his leg was caught between the surface of the turntable and the iron rail on the railroad track adjoining, resulting in injuries. This action was brought by the father to recover damages.

The specific acts of negligence charged in the complaint were that as originally constructed the turntable was so arranged as to be at all times, when not in use, securely locked and fastened, so as to prevent small children from moving it, but that at the time of the accident, and for a period of two months prior thereto, the lock and fastenings were broken and out of repair, during which time defendant allowed the turntable to remain unguarded and unclosed, and the only fastenings provided were of such kind that they could be easily removed by small children and the turntable set in motion; that during such period young children were in the habit of going upon the turntable and playing with it, of which defendant had knowledge. The court submitted to the jury the question whether the company had notice that children were in the habit of playing on the turntable, or had reasonable ground to apprehend that they might be doing so, and whether the temporary device was a sufficient and proper fastening for the purposes required, and the question of contributory negligence. Verdict for plaintiff, and defendant moved for judgment notwithstanding the verdict, or for a new trial, upon the grounds that the verdict was not justified by the evidence and was contrary to law; that the court erred in refusing defendant's motion at the close of the evidence to instruct the jury to bring in a verdict for defendant; and for errors in law occurring at the trial and excepted to by defendant. The motions were de-

nied, and judgment entered for plaintiff, from which judgment defendant appealed.

The injured child and the other small boys testified that at the time of the accident they found the turntable unfastened, and stated on cross-examination that at previous times the older boys had unfastened it—not only the temporary device, but also the permanent fixture, which they loosened by removing certain bolts, and replacing them when through with the table. Evidence was received which tended to show that, upon several occasions during the three or four weeks while the change was being made, children were in the habit of playing with the turntable. It was seen by the village watchman on one or two occasions to be moved around by the wind. No yardmaster or switchman was employed at the yard, and the only person in charge of the business at that point was the station agent; and the depot was a considerable distance from the turntable, which could not be seen from that point. A section crew operated from the yards, but it does not appear whether their duties required them to be in the locality where they would be likely to observe the turntable. A brakeman was called as a witness, who belonged to the train crew using the table every other night, and testified that it was the practice for either the fireman or himself to unfasten the turntable, turn the engine, and again fasten it. No direct evidence was introduced that the station agent or any of appellant's representatives or employees had actual knowledge that the turntable was being used by children, and there is no direct evidence that it was ever left unfastened by any of appellant's employees. Appellant submits this case upon the proposition that it has not been shown guilty of any actionable negligence, taking the most favorable view of the evidence for respondent.

If the court was correct in submitting the case to the jury upon any of the propositions above stated, then respondent must prevail upon this appeal. If the case turned simply upon whether appellant exercised ordinary care in adopting the link and wedge device for the temporary purpose while the permanent fixture was being repaired, we should unhesitatingly say that, as a matter of law, it did exercise ordinary care. Appellant seems to have recognized the necessity of employing a device which would securely lock with a key, and up to the time of the change there was nothing whatever in the record tending

to show that it had any notice of the fact that the boys were tampering with the fixtures. The substituted device was of a heavy character, not easily moved by small children, and, if properly fastened, by driving the iron wedge in tightly, it certainly would be all that was required, under the circumstances. This kind of a fixture is a decided improvement upon the old latch which was formerly in common use, and which was involved in the case of O'Malley v. St. Paul, M. & M. Ry. Co., 43 Minn. 289, 45 N. W. 440. But whether, under all of the circumstances disclosed by the evidence, the company exercised ordinary care in keeping this temporary fixture fastened during the time it was substituted for the permanent one, was a question of fact for the jury to pass upon.

We cannot agree with counsel that it was necessary, in order to fasten liability upon appellant, to show that it had actual knowledge of the fact that children were using the turntable. Conceding that the fixture was sufficient for the purpose, it was the duty of appellant to use reasonable care in keeping it properly fastened. It was seen to be unfastened upon several occasions during the month before the accident, and was so found by the boys on that occasion. It may have been unfastened by the older boys, and left so by them, or it may have been left loosely wedged or entirely unfastened by the members of the train crews who were using it every night. The length of time during which the table was seen to be unfastened, the fact that so many of appellant's employees used it nightly, and only one of them testified (no explanation appearing in the record), when considered with the other evidence, present a question of fact—whether the carelessness originated with the company, or with the children who used it as a plaything. If it conclusively appeared that during the month prior to the accident the table was manipulated by children during the daytime, and that they fastened it again upon each occasion, it might well be argued that under such circumstances there would not be sufficient evidence to put the company upon notice that the table was being tampered with. But the table was seen to be loose upon some occasions when no one was on it, and no cause appearing. If left in that condition by children, then the probability was that the train crews so found it, and this was a circumstance which the jury was entitled to take into consideration in determining whether appellant used reason-

able care in protecting the table from the encroachments of children.

Appellant seems to rely largely upon the location of the turntable, and contends that, simply because it was placed in rather an out of the way position, it was relieved of the responsibility of keeping watch and finding out whether it was being used by children. While it happens that, in most of the turntable cases heretofore under consideration by this court, the position of the table was adjacent to a public street or public place, and some emphasis was laid upon that fact, we do not consider the location involved in this case of very much importance. There were no fences or obstructions to prevent children from gathering upon this turntable, and, considering their disposition to roam around seeking places of amusement, very much stress should not be laid upon the probability that such a location would not be readily discovered. Under all the circumstances, the question of the injured child's contributory negligence was for the jury.

For the reasons stated, the motion for judgment notwithstanding was properly denied.

Judgment affirmed.