## CHICAGO, B. & Q. R. CO. v. SCHRIMPF.

(Circuit Court of Appeals, Eighth Circuit.   October 3, 1916.)

No. 4657.

1. EVIDENCE ⬤⇒554—HYPOTHETICAL QUESTION—ADMISSIBILITY.

In an action against a railroad company for the death of a passenger, which it was claimed resulted from the negligence of the company in unnecessarily exposing him, it appeared that the passenger, after rallying from an attack of congestion of the lungs, was sent to his home by train, and while being carried on a cot in the baggage car he was chilled when both doors of the car were open, though he was warmly dressed and covered with furs and blankets. A medical expert answered a long hypothetical question in favor of the plaintiff.   On cross-examination, the expert testified that in answering the question he assumed that deceased was unprotected from the draft, but admitted that a person might be so protected from a draft as to suffer no injuries. *Held* that, as the statements of the medical expert with reference to protection in a draft were indefinite, the answer cannot be stricken on the theory that it was not based on the facts stated therein.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2375;  Dec. Dig. ⬤⇒554.]

2. CARRIERS ⬤⇒281—CARRIAGE OF PASSENGERS—CARE.

Where the railroad company was advised of the condition of the passenger, it was bound to exercise care commensurate with his condition, and the worse he was the more care he was entitled to.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1093–1097, 1241; Dec. Dig. ⬤⇒281.]

3. CARRIERS ⬤⇒320(3)—CARRIAGE OF PASSENGERS—ACTIONS—JURY QUESTION.

Whether a railroad company negligently exposed a sick passenger, who was being carried on a cot in the baggage car, so that his death resulted therefrom, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1315;  Dec. Dig. ⬤⇒320(3).]

4. CARRIERS ⬤⇒346(2)—ACTIONS—EVIDENCE.

In an action against a railroad company for the death of a passenger, who was in a weakened condition when he started on a journey, evidence *held* insufficient to show that the passenger, who was exposed and chilled through the negligence of the company, was not in a condition to make the trip.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1401;  Dec. Dig. ⬤⇒346(2).]

5. CARRIERS ⬤⇒343—CARRIAGE OF PASSENGERS—DEFENSES—PLEADING.

In an action for the death of a passenger, who was being carried on a cot in the baggage car of a train, which it was claimed resulted from the railroad company's negligence in unnecessarily exposing him to the elements, so that he was chilled, the answer alleged that, if the passenger was in any way injured by reason of drafts playing upon him while on the train, such injury was in part caused by his negligence and those attending him. *Held* that, under such answer, the claim that deceased in making, and his medical adviser in advising, the trip, were guilty of negligence, cannot be urged.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1398;  Dec. Dig. ⬤⇒343.]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by Sophia Schrimpf, as administratrix of the estate of Gustav C. Schrimpf, deceased, against the Chicago, Burlington & Quincy Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Morton Barrows, of St. Paul, Minn. (Barrows, Stewart & Ordway, of St. Paul, Minn., on the brief), for plaintiff in error.

W. M. Jerome, of Minneapolis, Minn. (Ueland & Jerome and O. F. Greiner, all of Minneapolis, Minn., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The plaintiff in error was defendant in the District Court, and the defendant in error was the plaintiff there, and they will be styled here as in the lower court. This suit was originally brought in the district court of Hennepin county, Minn., and was removed by the defendant to the United States District Court. The suit is for damages for wrongfully causing the death of Gustav C. Schrimpf and resulted in a verdict and judgment for the plaintiff and defendant sued out a writ of error.

The jury had a right to find from the evidence that Gustav C. Schrimpf lived with his wife—that is, Sophia Schrimpf—at Robbinsdale, a suburb of Minneapolis. In the fall of 1913 he secured employment in a lumber yard at Bay City, Wis., which is 55 miles southeast of Minneapolis, on the Chicago & Minneapolis line of the defendant, and is 44 miles southeast of St. Paul. He worked in the lumber yard and lived at the hotel at Bay City until about March 15, 1914. On that date he called Dr. Robey, a physician of Bay City. The doctor found him in bed complaining of a severe cold and congestion of the lungs. The chief symptom was trouble with the smaller bronchial tubes. He had a slight fever. For a few days he became slightly worse; then he commenced to improve until the 26th day of March, when the doctor considered him out of danger. All the time he was generally confined to his bed. He was able to be up every day, however, and go to the toilet unattended. During the latter part of this time his fever was very slight, his temperature being from normal to one degree above, and most of the time was normal, and the lungs were practically cleared up. He still had a slight disturbance, or cough. On March 26th he was deemed well enough to take home. He got out of bed and with the assistance of his wife dressed himself. Being somewhat unsteady from the time spent in bed, he walked down stairs with an attendant on each side, who rendered him slight assistance in steadying him. He had on heavy winter underwear and an ordinary suit of clothes and a heavy overcoat and heavy cap. He was placed upon a cot with a heavy blanket or rug over him, and a fur-lined overcoat over that. He was then carried across the street about 50 feet to a baggage car of defendant. Deceased was then placed in the St. Paul baggage car. His physician remained with him there, his wife and son going into the passenger car. It took about 2 to 5 minutes to take

him from the hotel and place him in the baggage car. They left the hotel after the train pulled in, and so no time was lost except the 2 to 5 minutes referred to from the time he left the hotel until he was placed in the baggage car. The train carried two baggage cars, one called the Minneapolis and one the St. Paul car. The latter car was dropped at St. Paul, but the deceased was, perhaps for sufficient reason, put in the latter car, thus necessitating his transfer to the other car at St. Paul. The day was cold, disagreeable, inclement, damp, and wintry; but there was no falling weather. When the train reached St. Paul it was necessary to remove the baggage and express matter destined for that city from the Minneapolis car, so as to make room for the deceased, and this was done with both cars, probably to save time. It was 15 minutes or more after the car reached St. Paul before the baggage and express had been disposed of and they came to remove deceased to the Minneapolis car. During all the time deceased was lying in the front part of the car with his head toward the rear and about one foot in advance of the doorways. The doors were both wide open, and a cold and heavy wind blowing across the car. No reason is shown for having the doors on opposite sides of the car both open, but it was, of course, necessary to have the door open on one side while the contents of the car were removed. Deceased during this time complained of discomfort, of being cold. He commenced to be more congestive in the lungs and had more difficulty in breathing. His train finally took him to Minneapolis, where in a closed Red Cross automobile ambulance he was taken out to Robbinsdale to about 20 feet from his house door. He was then carried into his home, which was steam-heated. On the following morning he displayed symptoms of pneumonia, and he continued to grow worse until April 5th, when he died of lobar pneumonia.

[1] It is claimed that he was negligently exposed to a draft while at St. Paul, and that this exposure produced the pneumonia of which he died. Dr. Colp was the attending physician after the deceased reached Robbinsdale, and not only testified to the condition of the deceased up to the time of his death, but answered a long hypothetical question favorably to the plaintiff. There was considerable dispute as to the exact form of this question, and after it was finally amended there was no objection made to it. On cross-examination the witness testified as follows:

"Q. Then, if the body of a man is protected by clothing or rugs or overcoats so that his body is not exposed to the draft, and it is not very cold, it might be that a draft wouldn't affect him very much? A. That is very true. Q. And it would follow from that, wouldn't it, that you could protect a man from the ill effects of a draft, if he was thoroughly covered and keep his face out of the draft? A. Yes, sir; if he was thoroughly covered. Q. Now, in answering this hypothetical question, what did you assume to be the fact in that respect as to his protection from the draft? A. I assumed that he wasn't protected, that he was unprotected, that this draft blew over him, and might have struck the chest and the neck. Q. And that those parts of the body were unprotected? A. Yes, sir."

The defendant then moved the court to strike out the opinion of the doctor, on the ground that it was not based upon the facts stated in the hypothetical question, and was not consistent with the facts

brought out in plaintiff's case. This motion was denied. It must first be borne in mind that what the doctor said as to the protection from draft was indefinite and vague. Protection is a relative term. The slightest covering over the face of the patient would be some protection. Adequate protection is quite another thing. The words "protection" and "protected" are nowhere in the hypothetical question. The evidence itself is not clear on that subject. It shows the degree of protection we have already indicated, but does not show whether his face and neck were covered with the blankets or the fur overcoat. Under the circumstances we cannot say that his answer to the hypothetical question was not based upon the facts stated in it, nor can we say that it is not consistent with the facts brought out in plaintiff's case.

[2, 3] It is next urged that there was no evidence to warrant the verdict, but in this we cannot concur. It is true he had been sick; but, of course, that did not authorize any one to give him a fatal blow. There seems to have been no necessity for having the doors open on opposite sides of the car when he was lying at St. Paul, and if one of the doors had been kept closed the draft would have been nominal. In his condition the company was bound, not only to high care, but to such care commensurate with his condition, and the worse he was the more care was due him from the railroad company. Both Dr. Robey and Dr. Colp, who attended him, testify in their opinion it was this exposure that caused his death. It is true that Dr. Staples testified for defendant to the contrary; but there was not only sufficient evidence to go to the jury, but apparently a preponderance of the evidence that defendant's negligence caused the decedent's death. The defendant cites numerous Minnesota cases upon this subject, none of which appear to be in point.

[4] It is next contended that the deceased was guilty of contributory negligence in taking the trip in his disabled state. He was not negligent in the selection of his physician, and his doctor testifies he was well enough to make the trip, and that he so advised the deceased. The defendant asks us to first set aside this testimony, and then to hold that the doctor was negligent in consenting that deceased make the trip, and that his negligence will be imputed to the deceased. In the first place, we cannot find from the evidence that deceased was not in condition to make the trip, and this disposes of the whole question of contributory negligence. It is not necessary for us to express an opinion as to whether, when one employs a physician who negligently advises him to take a trip, and then employs a carrier to take him on the trip, the negligence of the physician can be imputed to the patient, so as to defeat a recovery by him against the carrier for its negligence. It is laid down in a standard law publication that:

"While the negligent act or omission of the person injured ordinarily defeats recovery, the rule is subject to the exception or qualification that, although such person has been guilty of negligence in exposing himself to danger, yet he may recover if defendant, after knowing of such danger could have avoided the injury by the exercise of ordinary care and fails to do so, as in such case the negligence of the person injured is not the proximate cause of the injury, and the negligence of defendant becomes the proximate cause." 29 Cyc. 530.

Even if the doctor was negligent, and his negligence was imputed to the deceased, it would not defeat a recovery under this holding.

[5] A further reason for refusing to sustain this point is the condition of the pleadings. The only allegation of negligence on the part of the deceased was as follows:

"3. Further answering the complaint, the defendant alleges that if the said Schrimpf was in any manner or degree injured or damaged by reason of any draft blowing upon him while upon the said train, that the said injury or damage was in part at least caused by the negligence and want of care of the said Schrimpf and the persons attending him."

This allegation was not sufficient to set up supposed contributory negligence by the persons attending him, not while on the trip, but advising him to take the trip. O'Malley v. St. Paul, M. & M. Ry. Co., 43 Minn. 289, 45 N. W. 440.

No error is made to appear, and the judgment of the District Court is affirmed.