ANDREW GUNDERSON, Administrator, vs. NORTHWESTERN ELEVATOR COMPANY.

August 24, 1891.

Dangerous Machinery — Negligence of Servant — Killing of Child — Liability of Master.—The defendant's grain elevator was operated by machinery moved by horse-power in an adjoining "power-house." The central wheel was moved by a horizontal lever.. Upon the wheel was a convenient place to sit and ride. The place was attractive to children, and they were permitted to frequent it. The employe in charge of the machinery and power-house, on the day in question, having notice of the presence of plaintiff's intestate, a boy six years old, hitched the horse to the lever, and started the power while the latter was sitting on the wheel, exposed to danger from uncovered machinery, and then left the premises with no one in charge. Soon after, in getting off the wheel, the child was caught under the "tumbling-rod," and killed. *Held* negligence, for which the master was liable.

Same—Parents held not Negligent.—The acts or omissions of the child's parents in suffering him to be upon the street, in the vicinity of the power-house, *held* not to be negligence proximately contributing to the injury, and, in any event, was a question for the jury.

Same—Damages held Excessive.—The measure of damages in this class of cases considered, and the verdict *held* not justified by the record.

Appeal by defendant from an order of the district court for Stevens county, *C. L. Brown,* J., presiding, refusing a new trial on plaintiff

v.47M.—11

consenting that the verdict (of $5,000) in his favor be reduced to $3,000.

*Wilson & Van Derlip*, for appellant.

*Nelson & Treat* and *H. T. Bevans*, for respondent.

VANDERBURGH, J.   Upon this appeal the following facts must be conceded:   On the 1st day of October, 1889, the plaintiff's son, a boy six and one-half years old, was living with his parents at Hancock, Stevens county, in this state, a small village of between two and three hundred inhabitants.   Their residence was on the north side of the principal street of the village.   The railroad ran parallel and south of the same street, and next adjoining the railway track, and south of the street, was situated the elevator of the defendant, operated by horse-power.   This power or machine was situated in a power-house next adjoining the elevator.   The large central wheel was moved by a horizontal lever, to the end of which a horse was hitched, which traveled a circuit about 20 feet in diameter.   The power was communicated from this wheel to a tumbling-rod coupled by a knuckle to another tumbling-rod extending to and connecting with the machinery inside of the elevator.   The tumbling-rod and knuckle next the power were not protected by any covering.   The doors of the power-house were usually left open at that season of the year, and boys were frequently attracted within to witness the operation of the power, and to ride on the power or lever, to the knowledge of the agents of the defendant in charge of the elevator.   Upon the central wheel a box suitable for a seat had been placed, and was frequently occupied while the power was in motion.   This state of things had existed for a considerable space of time before the date referred to.   On that day the deceased, plaintiff's son, referred to above, was out on the street near where he lived, at about 3 o'clock in the afternoon, when he was met by another boy about his age, who invited him "to go over and ride."   They went over together to the power-house, which was open as usual, and found the employe of the defendant in charge, who was just preparing to hitch the horse to the lever to start the machinery, and, by his permission, the deceased climbed up, and sat on the box above referred to, to ride there, while the other boy "hung on" the sweep behind the

horse.   While they were in this position, the horse was started, and the machinery put in motion.   Thereupon the employe referred to left the building with no one in charge of the horse and machinery except the boys.   Soon after he left, the deceased, in attempting to get off, got caught in the machinery, and was crushed under the knuckle of the tumbling-rod.

It is charged in the complaint, and the evidence tends to show, that it was customary for the agent of the defendant to leave the horse in this way without an attendant after he was started, and boys were permitted to come in and occupy the seat, and drive, so that the horse might be kept continually moving.   But, in determining the question of defendant's negligence in the premises, we need look no further than the negligent act of the employe in leaving the boys alone at this particular time, under circumstances of exposure to danger from the unprotected machinery.   We need not consider the question whether the act of the agent in granting permission to the deceased to ride on the horse-power was in the course of his employment or not; for whether the deceased was within the building and upon the machine with or without the express or implied consent of the defendant, its agent, then present and engaged in and about its business, knew the situation of the deceased lad; and his negligent act in starting the horse, and leaving the boy in a perilous position, was in the course of his employment, and is clearly imputable to the defendant.   The servant in charge of the horse and the machinery, and whose duty it was to start and attend to the same, represented the master.   The defendant was bound to use due care, under the circumstances, in the operation of dangerous machinery, in view of the fact that a child of tender years was then and there exposed to danger therefrom.   It was negligent in failing so to do.

And as respects the negligence under consideration, which resulted in the injury complained of, the child is found by the jury to be *non sui juris,* and hence not chargeable with contributory negligence. And, as respects the negligent act of the defendant, there was not and could not be any negligence on the part of his mother which contributed proximately to the injury.   But, in any event, the alleged negligence of the mother in permitting the boy to be at large was a

question for the jury, and was determined as a question of fact adversely to the defendant.

The view we have taken of the ground of defendant's liability renders it unnecessary for us to consider the principal assignments of error of the defendant. Indeed, the only other question requiring our attention is that of the damages.

2. The damages in such cases are in the reasonable discretion of the jury, but they must be based upon the evidence, and can include nothing for matters of aggravation which might be ground for punitive damages in other actions, or for injured feelings, or a *solatium*. They relate wholly to the pecuniary injury suffered by the next of kin. The question necessarily involves elements of uncertainty, but is peculiarly for the jury. The jury rendered a verdict for $5,000. This verdict cannot be supported upon any theory of the case. The jury must have proceeded upon a wrong rule, or disregarded all proper legal rules in estimating the damages. The court reduced the amount to $3,000, upon the authority of *O'Malley* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 289, (45 N. W. Rep. 440.) In that case, however, the question of excessive damages does not seem to have been pressed upon the attention of the court, and is not discussed in the opinion. The general question was carefully considered in *Hutchins* v. *St. Paul, M. & M. Ry. Co.*, 44 Minn. 9, (46 N. W. Rep. 79.) We are inclined to the opinion that the question did not receive due consideration on the trial of this case, and that the verdict is not warranted. It is perhaps not surprising, in view of the meagre and uncertain *data* furnished by the evidence, in the case of the death of a child so young, that it should be found difficult by courts and juries to arrive at a satisfactory conclusion as to the amount which ought to be allowed. In *Bollinger* v. *St. Paul & Duluth R. Co.*, 36 Minn. 418, (31 N. W. Rep. 856,) the evidence was such as to present a satisfactory basis for the verdict rendered, being the full amount allowed by the statute. Here we have only the facts that the deceased, a child of six and one-half years, was in good health, and of ordinary intelligence and promise, and that the plaintiff, his father and sole heir, was working on a salary, and of the age of 40 years. The measure of pecuniary aid which the father might reasonably expect from him

living would certainly be a matter of great uncertainty, depending upon his expectation of life, health, occupation, capacity, and disposition.    In respect to expectation of life, mortuary tables may be introduced and considered.    It is very easy to see how, without some such evidence, a jury might get an erroneous impression upon that subject in a case of this kind.    The following cases, mainly actions for the death of children, though not presenting uniform views on the subject, are instructive, and clearly indicate that the modified verdict in this case is still larger than would be sanctioned by the judgment of courts generally.    *Potter* v. *Chicago & N. W. Ry. Co.*, 22 Wis. 615, and cases; *Oldfield* v. *New York & Harlem R. Co.*, 3 E. D. Smith, 105; *O'Mara* v. *Hudson River R. Co.*, 38 N. Y. 445; *Ihl* v. *Forty-Second Street, etc., R. Co.*, 47 N. Y. 3*7; *McIntyre* v. *New York Central R. Co.*, 37 N. Y. 287, 293; 5 Amer. & Eng. Enc. Law, 129; *City of Chicago* v. *Major*, 18 Ill. 349; *Quin* v. *Moore*, 15 N. Y. 432; *McMahon* v. *Mayor*, 33 N. Y. 642; *Little Rock, etc., Ry. Co.* v. *Barker*, 33 Ark. 350, 363, and cases; *A., T. & S. F. R. Co.* v. *Brown*, 26 Kan. 443, 459–461; *Parsons* v. *Missouri Pacific Ry. Co.*, 94 Mo. 286, 300, (6 S. W. Rep. 464;) *Hurt* v. *St. Louis, etc., Ry. Co.*, 94 Mo. 255, (7 S. W. Rep. 1;) *Franklin* v. *Southeastern Ry. Co.*, 3 Hurl. & N. 211; *Duckworth* v. *Johnson*, 4 Hurl. & N. 653.    The question of damages must in such cases be committed largely to the sound practical sense and fair judgment of the jury.    It must, however, be determined judicially, and upon the evidence, and the damages assessed must be reasonably appropriate to the case made by it, and are not left to the uncontrolled discretion of the jury; and, in the case of a child *non sui juris*, the jury is not limited to nominal damages, but may, within reasonable limits, award substantial damages.    They are to be calculated with reference to a reasonable expectation of pecuniary benefit, as of right or otherwise, from a continuance of the life, and, in the case of a minor child, the recovery is not limited to the probable value of the services or earnings during his minority, but may also include the reasonable expectation of pecuniary benefit beyond that period.    *Potter* v. *Chicago & N. W. Ry. Co., supra*; *Scheffler* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 518, (21 N. W. Rep. 711.)    We realize that the question of the *quantum*

of damages is so largely within the discretion of the jury and the trial judge the appellate court should hesitate to interfere, except for clear and substantial reasons; but, for the reasons stated, we are of the opinion that there ought to be a new trial, and the question of damages reconsidered.

Order reversed.·