STATE OF MINNESOTA *ex rel.* JOHN KREY *vs.* PROBATE COURT OF DAKOTA COUNTY.

Argued Oct. 28, 1892.   Decided Nov. 4, 1892.

**Certiorari—Probate Code.**

The Probate Code (Laws 1889, ch. 46) does not allow an appeal from an order of the probate court, directing or refusing to direct payment of a claim against an estate; therefore certiorari will lie.

**Laws 1891, ch. 123, Construed.**

Laws 1891, ch. 123, does not make the amount recovered by an administrator or executor for wrongfully causing the death of deceased subject to payment of all debts incurred by the deceased for the support of himself and family, but, at most, only to such as were incurred in consequence of, or, at any rate, after, the injury causing the death.

*Certiorari* to review the proceedings of the Probate Court of Dakota County, *Moran, J.,* and to reverse its order made in April, 1892, denying the petition of John Krey for the payment of his claim against the estate of James W. Imeson, deceased. ·

Between May 1, 1888, and November 21, 1890, Imeson resided with his wife and family, of eleven children, in Dakota County. Between September 1, 1889, and November 21, 1890, John Krey, a

v.51M.—16

merchant, furnished to Imeson, for the support of himself and family, groceries and provisions of the value of $904.25, which sum is unpaid. Imeson died intestate November 21, 1890. His death was caused solely by a collision on that day at South St. Paul, between his carriage and a switch engine of the Chicago, St. Paul and Kansas City Railway Company. On January 12, 1891, Cynthia A. Imeson and James W. Barwise were appointed by the Probate Court administrators of Imeson's estate. Krey presented his claim against the estate, and it was allowed by the court to the amount of $884.09. In April, 1891, the administrators commenced an action against the Railway Company for the alleged wrongful act by which Imeson's death was caused. The suit was compromised, and the administrators received on June 19, 1891, on settlement, $880.80 net.

March 10, 1892, on the petition of Krey a citation was issued out of the Probate Court, requiring the administrators to show cause why they should not pay his claim out of the money received from the Railway Company. The hearing on this citation was had March 24, 1892. In April, 1892, the order to show cause was discharged. That court held that this money was not applicable to the payment of the debts of deceased. A writ of *certiorari* was allowed by the Chief Justice, returnable October 4, 1892. Return was duly made. On that day the respondent moved to quash the writ.

*Otto K. Sauer,* for relator.

The only question is as to the construction and applicability of Laws 1891, ch. 123, which besides reducing the amount that may be recovered, provides that out of that amount there shall first be deducted and paid any demand for the *support* of the deceased, and funeral expenses allowed by the court. The act is not unconstitutional because retrospective as affecting the vested rights of the widow and next of kin. The death of Imeson gave no one any vested right to recover therefor. A repeal of the act at any time before judgment would have defeated the suit. *Bailey* v. *Mason,* 4 Minn. 546, (Gil. 430;) *Dillon* v. *Linder,* 36 Wis. 344; *Van Inwagen* v. *City of Chicago,* 61 Ill. 31; *Town of Stafford* v. *Town of Sharon,* 61 Vt. 126; *Covington, etc., R. Co.* v. *Kenton Co. Court,* 12 B. Mon. 144. Re-

spondent's contention that the petitioner's claim is not one for the *support* of deceased, is clearly wrong. The act is very broad. *Any demand for the support of the deceased,* certainly includes groceries and provisions, the very necessaries of life. The *support* of a married man is inseparable from that of his family.

*Cyrus J. Thompson,* for respondent.

The motion to quash should prevail. The relator's remedy was by appeal to the District Court. Laws 1889, ch. 46, § 254. Therefore *certiorari* will not lie. *State* v. *Milner,* 16 Minn. 55, (Gil. 43;) *Minnesota Cent. R. Co.* v. *McNamara,* 13 Minn. 508, (Gil. 468;) *Wood* v. *Myrick,* 9 Minn. 149, (Gil. 139.)

Laws 1891, ch. 123, was passed after Imeson's death. Immediately after receiving the injury, Imeson had a cause of action against the Railway Company, which the legislature could not thereafter take away. The right vested in him in his lifetime, and by the statute then in force the same right descended to his widow and next of kin. 1878 G. S. ch. 77, § 2; Laws 1889, ch. 109; *Rugland* v. *Anderson,* 30 Minn. 386; *Boutiller* v. *Steamboat Milwaukee,* 8 Minn. 97, (Gil. 72.) This right the legislature could not, by subsequent legislation, take away or alter. In so far as Laws 1891, ch. 123, attempts to do this, it is unconstitutional. *Menges* v. *Dentler,* 33 Pa. St. 495; *Kay* v. *Pennsylvania R. Co.,* 65 Pa. St. 269; *Dunlap* v. *Toledo, A. A. & G. T. Ry. Co.,* 50 Mich. 470; *Osborne* v. *City of Detroit,* 32 Fed. Rep. 36; *Eastman* v. *Clackamas Co.,* 32 Fed. Rep. 24.

The act does not warrant the construction contended for by relator. The legislature evidently had in mind the class of cases where persons employed in operations involving more or less personal risk and danger, receive injuries resulting in death. These persons are generally improvident of the future. But the dead must be buried, and the necessities of the living provided for, and unless some means be devised whereby those who should minister to the wants of the injured can receive compensation, many of these unfortunate will become objects of charity. The legislature in view of this wisely provided that any demand for the support of the de-

ceased and funeral expenses shall be first deducted and paid. The relator furnished groceries for the support of the deceased and his family, before the injury, relying on the credit of Imeson. The claim is neither more nor less than an ordinary debt, and should stand on no better basis.

GILFILLAN, C. J.  *Certiorari* to bring here the order of the Probate Court of Dakota county, denying an application for an order directing the administrators of an estate to pay a claim which had been allowed. The respondent moves to quash the writ on the ground that appeal, and not *certiorari*, is the proper remedy. The writ will lie, and it will lie only, to bring here a final determination of a party's right, when no appeal is given. Under 1878 G. S. ch. 49, § 13, an appeal from such an order as here involved was allowed. But, though it seems strange, such an order is omitted in the specification of those from which an appeal may be taken in Laws 1889, ch. 46, known as the Probate Code, § 252. Section 254 provides who in certain cases may bring an appeal, but does not enlarge the operation of section 252. As the right to appeal depends entirely upon statute, there is none from such orders as this, and the writ will therefore lie.

The administrators had no funds or property in their hands with which to pay the claim, unless the sum of about $800 received by them in settlement of an action brought by them to recover for causing, through negligence, the death of the intestate, may be applied to that purpose. The relator's claim was for groceries and provisions sold to the deceased for the use of himself and family during something more than a year before the injury from which he died. He died November 21, 1890, and the action by the administrators was commenced April 21, 1891, and the money was received by them June 19th that year. Of course, it stands just as it would stand had it been received upon judgment in the action. Was the money, then, applicable to such a claim as the relator's? No question could be made upon it as the law stood prior to Laws 1891, ch. 123. The action was given solely for the benefit of the widow and next of kin, not to recover such damages as the person injured

might have recovered had he lived, but, as the courts have always construed the statute, to compensate them for the pecuniary loss caused by the death; and under the statute the amount recovered, though in an action by the executor or administrator, was no part of the estate to be administered and applied to payment of debts and legacies.    Whether so applicable now, and, if so, to what extent, depends on the proviso to section 1, ch. 123, above referred to.    The section, after declaring, as the statute had always done before, that the recovery shall be for the exclusive benefit of the widow and next of kin, provides "that any demand for the support of the deceased, and funeral expenses, duly allowed by the probate court, shall be first deducted and paid."    The respondent insists that, as applied to causes of action accrued before it passed, this proviso would be unconstitutional, because taking away vested rights.    But, with the the interpretation we place on the proviso, it is not necessary to decide that question in this case.    We assume, then, for the purpose of this case, that the proviso is valid.

How far did the legislature intend to change the law as it stood before?    Did it intend to make the amount recovered subject to all debts of the deceased incurred within the period of the statute of limitations, for the support of himself and family?    If so, the change is very great, for with most men a large part of the debts owing at their decease was incurred directly or indirectly for the support of themselves and families.    Bearing in mind that the recovery is allowed to compensate for the pecuniary loss of the widow and next of kin, we cannot conclude it was intended to make all such debts payable out of it.    Yet there is no alternative but to hold that, or to hold that only such demands for support as accrued in consequence of, or, at any rate, after, the injury causing the death, are payable out of the recovery    Though the latter construction requires some restriction to the letter of the statute, we think it is according to the meaning of the legislature.    But it is significant that the demand is confined to "the support of the deceased."    The terms do not extend to demands for support of the family.    If we were to extend the proviso to demands accruing prior to the injury, and adhere to its letter, it would be necessary in many cases to ascertain how much

of such a demand was incurred for the support of the deceased, and how much for his family,—a thing difficult, if not impossible, to do. Relator's claim was not payable out of the fund in the hands of the administrators, and the order of the probate court was right.

Writ quashed.

(Opinion published 53 N. W. Rep. 463.)