SWIFT & CO. v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit. June 24, 1905.)

No. 1,991.

1. DEATH BY WRONGFUL ACT—RIGHT OF RECOVERY—COMMON LAW—STATUTES.

By the common law no action lies for an injury resulting in death. Where a right of action is given by statute, an action can be maintained only for the benefit of the persons named in the statute, and then only for the recovery of such damages as are contemplated by it.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 10, 11.]

2. SAME—MINNESOTA STATUTE—BENEFICIARIES—DAMAGES.

The right of action given by the Minnesota statute is for the exclusive benefit of (a) those who have demands for the support of the deceased during the time, if any, intervening between his injury and his death; (b) those who have demands for his funeral expenses; and (c) the widow and next of kin. Where the deceased leaves no widow or child, the Minnesota statute makes the father, if living, the sole next of kin, to the exclusion of a surviving mother and sister. The damages which may be recovered under the Minnesota statute for the benefit of whoever may be next of kin is limited to compensation for the loss of such pecuniary benefit as could have been reasonably expected to result to the beneficiary or beneficiaries, as of legal right or otherwise, from the continued life of the deceased, excluding all consideration of punitive elements, loss of society, wounded feelings of the survivors, and suffering of the deceased.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 35–48, 112.]

3. SAME—TRIAL—RULINGS CALCULATED TO CAUSE JURY TO GIVE CONSIDERATION TO LOSS OF OTHERS THAN LEGAL BENEFICIARY.

In an action to recover for death by wrongful act, where the father is the sole beneficiary and the recovery will be for his exclusive benefit, the admission of evidence of the mother's expectancy of life, and other rulings calculated to cause the jury to believe that any recovery will or can be so distributed by the probate court that the mother may participate in the distribution, are prejudicial to the defendant, and clearly entitle it to have the jury plainly instructed in the final charge that no damages can be given for any loss sustained by the mother, and that no part of the recovery will be for her benefit.

4. SAME—INFANTS—EMANCIPATION.

Where deceased's father willfully abandoned him when nine years of age, and contributed nothing to his support up to the time of his death, a period of seven years, during which he was obliged to support himself, the law implies an emancipation, and recalls the father's right to the child's services and earnings.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Parent and Child, § 167.]

5. SAME—PECUNIARY LOSS MUST APPEAR BY EVIDENCE AND CANNOT BE MERELY CONJECTURED.

The law, in confining the compensation to the pecuniary loss, does not run along the lines of the imaginary and the possible, but rather along the lines of the actual and the probable, and therefore the loss must be made to appear by the evidence. Conjecture cannot supply the absence of evidence, or avoid the effect of evidence which is presented.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 55–57, 502, 509.]

6. SAME—REASONABLE EXPECTATION OF PECUNIARY BENEFIT FROM CONTINUANCE OF LIFE—EVIDENCE.

Where a father willfully abandoned his family, including deceased, then nine years of age, and did not communicate with them or contribute

anything to their support up to the time of the death of the deceased, a period of seven years, and where the deceased actually turned all of his earnings over to his mother, to be used for the support of his younger sister and himself, evidence that prior to his death deceased had made statements that, if his father was in need of anything, he would give him a dollar, or something, and that he would always carry money in his pocket, and, if he ever met his father, he would offer him money, if he would take it, while affording basis for conjecture respecting a possible restoration of the natural relations of father and son, had the son lived, was too unsubstantial to sustain a finding by the jury of a reasonable expectation that the continued life of the son would have been of pecuniary benefit to the father.

**7. SAME—DIRECTED VERDICT FOR NOMINAL DAMAGES.**
Where an action to recover for the death of a minor son is prosecuted for the sole benefit of the father, who is conclusively shown to have lost his legal right to the services and earnings of the son during his minority, and where, apart from this legal right, there is no substantial evidence of a reasonable expectation of pecuniary benefit to the father from the continued life of the son, the recovery should be limited to nominal damages.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, § 97.]

In Error to the Circuit Court of the United States for the District of Minnesota.

This was an action by an administratrix, on behalf of the next of kin, to recover damages for the death of her intestate. There was substantial evidence tending to show that the death resulted from an injury caused by the negligence of the defendant, which would have given the deceased a right of recovery, had he lived. The injury and death occurred at South St. Paul, Minn., March 13, 1903. The deceased was about 17 years of age, and left surviving him a father, aged 38 or 39 years, a mother, and a younger sister, but no widow or child. In 1896 the father informed the mother that she must go out washing, and that he would not provide for her or the children. He then separated from them, and did not thereafter contribute anything to their support or have any communication with them, save that on one occasion he inquired of the son if he liked the work which he was doing, and told him to be good, and on another occasion gave him 50 cents. After the separation the children lived with the mother, who for the next three or four years supported them and herself by the proceeds of such employment as she could obtain. She then obtained a divorce and married again, the children continuing to live with her as before. From about that time the son had regular employment, and gave all of his earnings to his mother, who used them chiefly in supporting the children. At the time of his death he was earning $45 per month. He was a strong and industrious lad, of fair education for one of his opportunities, and with a strong affection for his mother and sister. The only evidence respecting the son's disposition toward his father was this: The mother testified: "I don't know if he gave him anything. I don't know; but he said, if his father was in need of anything, he should give him a dollar." "He would very seldom speak of him. He always said, if his father was in need of anything he would give him something." And another witness, intimately acquainted with the family, and who had seen the son frequently, testified: "Q. Did you ever hear him express his feelings toward his father? A. Not until I spoke about how destitute his father was, and that I had got him some things. He said he would always carry money in his pocket, and, if he ever met his father, he would offer him money, if he would take it." When the father separated from the family he was a saloonkeeper at South St. Paul, was greatly addicted to the excessive use of liquor, and when intoxicated was inclined to use harsh and unkind language toward his wife and children. He was improvident and squandered whatever came into his hands. In 1901 he was still in South St. Paul, but doing nothing. In the spring of 1902 he was in destitute circumstances at Hastings, Minn., where he obtained employment until November of that year, when he received about $200 in wages, and went away with the purpose to

engage in the saloon business elsewhere. What became of him after leaving Hastings is not shown. During his employment at that place he remained sober, and was heard to speak affectionately of his children, but he did nothing toward resuming his parental duties, or toward restoring between himself and his children the natural and usual relations of parent and child. It does not appear that he took any interest in the prosecution of the action by the administratrix, or that he even knew of the death of the son. There was a verdict and judgment for plaintiff for $2,500, which defendant seeks to have reversed upon this writ of error.

Robert E. Olds (Frank B. Kellogg, C. A. Severance, Alfred H. Veeder, and Henry Veeder, on the brief), for plaintiff in error.

S. C. Olmstead, for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal questions presented upon this record are: (1) For whose benefit was the action maintainable? (2) What was the proper measure of recovery?

By the common law no action lies for an injury resulting in death, but the state of Minnesota, like most or all of the other states, has enacted a statute, modeled after Lord Campbell's act in England, which modifies the common-law rule, and authorizes the maintenance of such an action. Gen. St. 1894, § 5913. Being entirely statutory, the action can be maintained only for the benefit of the persons specified in the statute, and then only for the recovery of such damages as are contemplated by it. Nash v. Tousley, 28 Minn. 5, 8 N. W. 875; Scheffler v. Minneapolis & St. Louis Ry. Co., 32 Minn. 125, 19 N. W. 656; St. Louis, Iron Mountain & Southern Ry. Co. v. Needham, 3 C. C. A. 129, 52 Fed. 371; Western Union Telegraph Co. v. McGill, 6 C. C. A. 521, 57 Fed. 699, 21 L. R. A. 818; Sanders v. Louisville, etc., Co., 49 C. C. A. 565, 111 Fed. 708. Repeated and uniform decisions of the highest court of the state have given to the statute a settled meaning and effect, which may be summarized as follows: The right of action which the statute creates is for the exclusive benefit of (a) those who have demands for the support of the deceased during the time, if any, intervening between his injury and his death; (b) those who have demands for his funeral expenses; and (c) the widow and next of kin. The damages recoverable for the benefit of the widow and next of kin are confined to compensation for their strictly pecuniary loss, excluding all consideration of punitive elements, loss of society, wounded feelings of the survivors, and suffering of the deceased; and the extent of the loss is to be determined solely with reference to the pecuniary benefit reasonably expected by the widow and next of kin, as of legal right or otherwise, from the continued life of the deceased. Shaber v. St. Paul, Minneapolis & Manitoba Ry. Co., 28 Minn. 103, 107, 9 N. W. 575; Scheffler v. Minneapolis & St. Louis Ry. Co., 32 Minn. 518, 21 N. W. 711; Robel v. Chicago, Milwaukee & St. Paul Ry. Co., 35 Minn. 84, 89, 27 N. W. 305; Bolinger v. St. Paul & Duluth R. Co., 36 Minn. 418, 31 N. W. 856,

1 Am. St. Rep. 680; Hutchins v. St. Paul, Minneapolis & Manitoba Ry. Co., 44 Minn. 5, 9, 46 N. W. 79; Gunderson v. Northwestern Elevator Co., 47 Minn. 161, 164, 49 N. W. 694; State ex rel. v. Probate Court of Dakota County, 51 Minn. 241, 53 N. W. 463; Sykora v. Case Threshing Machine Co., 59 Minn. 130, 60 N. W. 1008; Sieber v. Great Northern Ry. Co., 76 Minn. 269, 275, 79 N. W. 95; Foot v. Great Northern Ry. Co., 81 Minn. 493, 84 N. W. 342, 52 L. R. A. 354, 83 Am. St. Rep. 395. As a matter of pleading, it is also settled by the decisions of the state court that a complaint does not show a right of recovery in respect of a widow or next of kin unless it alleges (stating names and how related) that the deceased left a widow or next of kin, who are entitled to compensation, and does not show a right of recovery in respect of demands for the support of the deceased or for his funeral expenses unless it alleges that there are such demands. Schwarz v. Judd, 28 Minn. 371, 10 N. W. 208; Sykora v. Case Threshing Machine Co., supra; Barnum v. Chicago, Milwaukee & St. Paul Ry. Co., 30 Minn. 661, 16 N. W. 364.

The deceased left no widow or child, but was survived by a father, mother, and younger sister. In these circumstances, the statutes of the state make the father the sole next of kin. Gen. St. 1894, § 4477, cl. 6; Id., § 4471, cl. 3. The complaint contains no allegation of the existence of any demand for the support of the deceased between his injury and his death, or for his funeral expenses, and no evidence upon that subject was offered at the trial. The action was maintainable, therefore, exclusively for the benefit of the father, and without any regard to the loss sustained by the mother or sister, because as respects their loss no right of recovery exists by the common law or by the statute.

It is said in the brief of counsel for the administratrix:

"It was not questioned upon the trial, and is not questioned now, that a surviving father is the next of kin to his child, under the statutes of the state of Minnesota, and that the damages recoverable are to be regarded as wholly compensatory for the father's pecuniary loss."

But this statement is not fairly sustained by the record. The complaint alleges:

"That at the time of his death said Charles Benson was an infant of the age of sixteen years on the 6th day of April, 1902. That he was unmarried, and left surviving him his father, August Benson, and his mother, Mathilda Johnson. That his said father and mother, and each of them, have been damaged by and through the death of said Charles Benson in the sum of five thousand dollars."

And among the things occurring at the trial were these:

The plaintiff, over the defendant's objection, was permitted to introduce evidence of the mother's expectation of life. The defendant sought to show what had become of the father after his separation from the family, and in ruling upon the plaintiff's objection thereto the court observed:

"Generally the 'next of kin' means nearest of blood, and there certainly could be no person nearer to the plaintiff than his mother; and if the authority cited by the judge in the case (Thompson v. Chicago, etc., Co. [C. C.] 104 Fed. 845) which I refer to is correct—that the father has ceased to have

any right to the services of the son while the latter remains a minor, but that the mother, from the fact that she continues to perform her parental duties, is entitled to his services—it seems to me as though that ought to place her in the condition or position with reference to the child which the father has given up and surrendered. But it is not the duty of this court to distribute, or to indicate what should be the proper distribution of, the damages, if any are recoverable in a case of this kind. That is a matter for the court to which the administratrix is answerable. A verdict covering an amount which any beneficiaries may be entitled to recover under the statute is for a gross sum."

In that connection, counsel for the defendant inquired, "Do I understand your honor to rule upon this question whether the father is the next of kin in this case?" and the court responded, "No; I do not rule upon that. I think it is immaterial." At the conclusion of the evidence, and before the instructions to the jury were given, these statements were made:

"The Court: In this state, especially in view of the language in this very act—that the recovery shall be distributed the same as the personal property of the deceased would be distributed under the laws of the state—I think, under that statute, the father, if living, would be the next of kin. Mr. Olmstead (for plaintiff): I think I will have to concede that, whatever money may be recovered in this action, the title to it would stand in the father. The Court: I think, as far as the distribution of the money is concerned, that is a matter that the court which has charge of the administration can attend to."

Thus, by the allegations of the complaint, and by the introduction of evidence of the mother's expectation of life, the plaintiff asserted a right to have the recovery include compensation for the mother's loss, or at least to have the amount of the recovery computed and determined with some regard to her loss; and in the course of the trial this contention received the approval of the court to a degree which was well calculated to make a strong impression upon the minds of the jurors, to cause them to give attention to the testimony bearing upon the mother's loss, to arouse their sympathies in her behalf (she being the administratrix and a principal witness), and to produce an award of damages in an amount which would enable her to obtain some substantial benefit therefrom through a distribution which it was indicated would be made by the state court exercising probate jurisdiction. The jurors could hardly have failed to understand that "distribution" meant division; and yet there could be no distribution of the recovery, in the sense of a division, because there was but a single beneficiary (the father), and the recovery, whatever the amount, would be for his exclusive benefit, as compensation for his pecuniary loss, and none other. The concession made by counsel for the plaintiff was not calculated to correct the erroneous impression theretofore conveyed to the jurors, because, when considered with the observation made by the court at the time, the concession was to the effect that the title—counsel immediately spoke of it as "the legal title"—to the money recovered would be in the father, but that the money would still be subject to distribution; in other words, the jurors were still left to infer that there would be a disposition or division of the money, in which the mother would or might be a participant and beneficiary.

Conceiving that the admission of evidence of the mother's expectation of life and the recognition which had been given to her loss and claim to compensation would operate prejudicially to it, the defendant requested the court to affirmatively charge the jury that no damages could be given for any loss sustained by the mother, and that no part of the recovery would be for her benefit. The request was refused, and error is assigned upon that ruling. The request should have been granted. The admission of evidence of the mother's expectation of life was error, and the recognition which was given to her loss and claim to compensation plainly tended to operate prejudicially to the defendant. When, in the course of a jury trial, inadmissible evidence is admitted, or erroneous rulings are made, or incorrect opinions are expressed by the court, which are calculated to attract the attention of the jury to matters outside of the issues, or to otherwise operate prejudicially to either party, it is clearly the right of that party to have the jury plainly instructed in the final charge in a manner which will distinctly withdraw the objectionable evidence from their consideration, remove from their minds any erroneous impression arising from the mistaken rulings or opinions, and prevent any resultant prejudice. St. Louis & San Francisco Ry. Co. v. Farr, 6 C. C. A. 211, 216, 56 Fed. 994, 1000; Pennsylvania Co. v. Roy, 102 U. S. 451, 460, 26 L. Ed. 141; Waldron v. Waldron, 156 U. S. 361, 383, 15 Sup. Ct. 383, 39 L. Ed. 453; Washington Gaslight Co. v. Lansden, 172 U. S. 534, 555, 19 Sup. Ct. 296, 43 L. Ed. 543; Throckmorton v. Holt, 180 U. S. 552, 567, 21 Sup. Ct. 474, 45 L. Ed. 663. It is said that the error was corrected, the jury properly enlightened, and prejudice prevented, by the court's final charge, in which the jury were told that the statute gave a right of action to the administratrix for the benefit of the next of kin, that the amount recoverable was the pecuniary loss to the next of kin, and that the next of kin was the father. Probably this instruction would have been sufficient if the matter had not been previously put before the jury in a manner calculated to mislead them, but the circumstances required something better designed to correct the previous error or mistake—something which the jury would plainly recognize as intended to entirely withdraw from their consideration the mother's loss, and all expectation that she would or might participate in the recovery through its distribution by another court.

Error is also assigned upon the court's refusal to give an instruction requested by the defendant limiting the recovery to nominal damages. The correctness of the ruling depends upon two questions: (1) Did the evidence conclusively establish that the father had lost his legal right to the services and earnings of the son during his minority? (2) Apart from this legal right, was there any substantial evidence of a reasonable expectation of pecuniary benefit to the father from a continuance of the life of the son?

Generally the father, as head of the family, is entitled to the services of his minor children, or to their earnings, if by his permission they are employed by others. He is also under obligation

to support his children during their minority. The right and obligation are correlative, and where the father neglects or refuses to support his child, denies him a home, or abandons him, so that he is obliged to support himself, the law implies an emancipation, and recalls the father's right to the child's services and earnings. Nightingale v. Withington, 15 Mass. 272, 8 Am. Dec. 101; Wodell v. Coggeshall, 2 Metc. (Mass.) 89, 35 Am. Dec. 391; McCarthy v. Boston & Lowell R. R., 148 Mass. 550, 20 N. E. 182, 2 L. R. A. 608; Farrell v. Farrell, 3 Houst. 633; McGarr v. National & Providence Worsted Mills, 24 R. I. 447, 53 Atl. 320, 60 L. R. A. 122, 96 Am. St. Rep. 749; Nugent v. Powell, 4 Wyo. 173, 194, 33 Pac. 23, 20 L. R. A. 199, 62 Am. St. Rep. 17; Winslow v. State (Ala.) 9 South. 728; Savannah, etc., Co. v. Smith (Ga.) 21 S. E. 157; Clark v. Northern Pacific Ry. Co. (Wash.) 69 Pac. 639, 59 L. R. A. 508; Thompson v. Chicago, etc., Co. (C. C.) 104 Fed. 845.

Without conflict, the evidence established these facts: The father had willfully abandoned his family when the son was nine years of age, and the daughter six. He had wrongfully cast the burden of supporting the children upon the mother, whom he left in necessitous circumstances. He had thus obliged the son, when far within his minority, to obtain employment and assist in the support of himself and sister. He had wholly neglected his paternal obligation for a period of seven years preceding the son's death. His neglect had been the same whether he was employed or unemployed, and whether he was free from the influence of intoxicants or under their influence; and his neglect had been intensified by an almost absolute cessation of communication with his children. No other conclusion was permissible under the evidence than that there had been an emancipation of the son, and that the father had forfeited and lost the right which otherwise he would have had to the son's services and earnings during his minority.

As the extent of the loss which is intended to be compensated under the statute is not to be determined solely by the legal rights of the beneficiary, but with reference to the pecuniary benefit which he may have reasonably expected, as of legal right or otherwise, it is yet to be considered whether or not there was any substantial evidence of a reasonable expectation of pecuniary benefit to the father, otherwise than as of legal right. The law, in confining the compensation to the pecuniary loss, does not run along the lines of the imaginary and the possible, but rather along the lines of the actual and the probable, and therefore the reasonable expectation must be made to appear by the evidence. Conjecture, speculation, and fancy cannot supply the absence of evidence, or avoid the effect of the evidence which is presented. The conditions surrounding the beneficiary and the deceased at the time of the death, their past relations, and the law of human experience are the sole criteria of the expectation and of its reasonableness. Other conditions or changed relations, not reasonably probable, cannot be conjectured and assumed merely because of the possibility of their accomplishment and their conformity to higher ideals.

As was said by Mr. Justice Brewer, when a member of the Supreme Court of Kansas:

"The enigma of the future of a life is not to be solved by the mere matter of faith and hope, or even by the natural possibilities of accomplishment, but mainly and chiefly by the experiences of the past, and what the life has already been." Atchison, etc., Co. v. Brown, 26 Kan. 443, 460.

The natural influence or prompting of kinship is always an important factor in cases like this, and is to be carefully considered, but it is not controlling. A father can have no reasonable expectation of pecuniary benefit from the continued life of a son who, although possessing a strong filial love, is without property and is incapacitated from labor of all kinds, or who, although possessed of property or earning capacity, has unmistakably shown that he is insensible to the natural influence or prompting of kinship. So, also, a father who willfully abandons a minor son, and for several years proves insensible to every legal, moral, and natural obligation to him, can have no reasonable expectation of pecuniary benefit from his continued life while that situation continues. The case before us is of this type. The evidence is without conflict, and has been already commented upon. The father not only willfully abandoned his son, but the circumstances of the abandonment and of its continuance for seven years unmistakably show that he was insensible to the influence and prompting of kinship; that he was an unnatural father. More than that, the mother and sister, in consequence of their abandonment by the father, had naturally and deservedly become objects of the son's special consideration; and it was reasonably probable that he would be disposed to employ his surplus means, if any, in administering to their wants and comfort. He was without property, his opportunities had been restricted, and his earning capacity did not reasonably promise to be large. There was also the possibility, if not probability, that he would marry and have a family of his own, for whose support he would be obligated both legally and morally. These matters precluded a reasonable expectation that his continued life would be of pecuniary benefit to the father.

As is shown in the statement preceding this opinion, there was some evidence that the father and son retained some affection each for the other; and it is urged that, had the son lived, the natural relations of father and son might have been restored. A restoration was possible, but this evidence was too slight to overcome the effect of the seven years of willful abandonment, neglect, and separation. It afforded a basis for conjecture, but not for belief. Notwithstanding these transient manifestations of affection, there was no resumption of communication between the father and the son. The father remained utterly indifferent to his legal, moral, and natural obligations, and the son continued to turn all of his earnings over to his mother. Contrasted with the character and duration of the abandonment, neglect, and separation, the evidence of continued affection was at best only a scintilla, and was not sufficient to make its effect a question for the jury. In the federal courts, when the evidence upon a question of fact is so clearly prepon-

derant or of such a conclusive character that the court would be bound, in the exercise of a sound judicial discretion, to set aside a finding in opposition to it, it is the duty of the court to withdraw the question from the jury and direct their finding; and thus, before the question of fact is submitted to the jury, a preliminary question of law always arises for the decision of the court, and that question is not whether there is literally no evidence, but whether there is any substantial evidence, the consideration of which is properly within the province of the jury. Chicago, St. P., M. & O. Ry. Co. v. Belliwith, 28 C. C. A. 358, 83 Fed. 437; Patillo v. Allen-West Commission Co., 65 C. C. A. 508, 131 Fed. 680; Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867; Commissioners v. Clark, 94 U. S. 278, 24 L. Ed. 59; Randall v. Baltimore & Ohio R. Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003; Southern Pacific Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338, 40 L. Ed. 485; Coughran v. Bigelow, 164 U. S. 301, 307, 17 Sup. Ct. 117, 41 L. Ed. 442; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.

Decisions of the Supreme Court of Minnesota are referred to as indicating that, notwithstanding the conditions surrounding the father and son at the time of the latter's death, and their past relations, it was permissible for the jury to speculate upon the restoration of the natural relations of father and son, and, because of its possibility, to award substantial damages for the father's benefit. There are expressions in some of the decisions of the state court which, taken by themselves, give slight color to the contention; but certainly the better, if not the only permissible, view of these expressions is that they refer, perhaps not happily, to the difficulty of getting at the amount of the damages with precision and accuracy, and are not at all intended to declare that the right to damages or their amount may be rested upon so uncertain a basis as mere speculation upon possible—not reasonably probable—occurrences in the future. The nature of the question justifies a statement of what has been said by the state court respecting it. In Scheffler v. Minneapolis & St. Louis Ry. Co., supra, it is said:

"Any estimate of the pecuniary benefit which will be derived by the next of kin from the continuance in life of a child who dies at the age of 18 months must be little, if any, better than mere guesswork, yet the statute appears to authorize an action even in such a case."

In Robel v. Chicago, Milwaukee & St. Paul Ry. Co., supra, it is said:

"Obviously and necessarily the amount of such damages must in any case be to a great extent conjectural, and much must be left to the judgment of the jury."

But it is to be observed that it is also said in that case:

"But the statute contemplates an assessment of damages, and not a merely arbitrary award. Such assessment must be based upon the reasonable expectation of benefit to the surviving next of kin from the life of the deceased. Where such beneficiaries were so related to him that they would not have been legally entitled to support, service, or contribution from him, it may be accepted as the law that no substantial recovery can be had without proof of such facts and circumstances as render it probable that actual and sub-

stantial benefit would have accrued to them from his continued life. * * * Although the evidence in this case was exceedingly meager, yet, in view of the facts that the father of Robel would have been entitled to the fruits of his labor for a period of nine months subsequent to the time of his death, and that Robel was actually engaged in an active employment, presumably yielding compensation, we think that a recovery might have been had of more than a merely nominal amount."

It is said in Gunderson v. Northwestern Elevator Co., supra, that:

"The question of damages must in such cases be committed largely to the sound practical sense and fair judgment of the jury," and that "in the case of a minor child the recovery is not limited to the probable value of the services or earnings during his minority, but may also include the reasonable expectation of pecuniary benefit beyond that period."

But it is to be observed that it is also said in that case:

"It must however be determined judicially and upon the evidence, and the damages assessed must be reasonably appropriate to the case made by it, and are not left to the uncontrolled discretion of the jury."

And in Sieber v. Great Northern Ry. Co., supra, it is said: "But at best the amount of damages must be largely a matter of conjecture," but in the same connection it is also said:

"It is undoubtedly true that the reasonable character of the expectation of pecuniary benefit from the continued life of the deceased and of the probable amount of that benefit must appear from the facts in proof."

The true meaning of these decisions is indicated in Bolinger v. St. Paul & Duluth R. Co., supra, where it is said: "The determination of the amount of damages however must be a judicial one, and is not left to the uncontrolled discretion of the jury," and in Hutchins v. St. Paul, Minneapolis & Manitoba Ry. Co., supra, where it is said:

"But even in those cases the determination of the amount of damages is by no means left to the uncontrolled discretion of the jury. Their estimate must be based on facts in evidence." And also: "True, it is possible that he [deceased] might have become more thrifty in future, but this was not at all probable, in view of his age and past history. He might have met with some extraordinary streak of good luck, such as the discovery of a valuable mine or drawing a large prize in a lottery, but these contingencies are altogether too speculative to form a legitimate basis for an estimate of damages."

This statement of what has been said by the Supreme Court of the state shows the rule of that court to be that the right to substantial damages and their amount must be determined judicially, not arbitrarily, and must be determined upon the evidence, and not upon mere speculation, conjecture, or fancy. But if the decisions of that court were properly susceptible of the interpretation suggested, but not acceded to, they would not in that respect be obligatory upon this court. The state court has uniformly held that the statute authorizes the recovery of compensatory damages only, excluding all punitive elements, and this court is therefore controlled by the rule of general law applied by the federal courts, which, in respect of the right to and the assessment of purely compensatory damages, excludes all consideration of matters which rest in speculation, conjecture, or fancy. Richmond & Danville R. Co. v. Elliott, 149 U. S. 266, 13 Sup. Ct. 837, 37 L. Ed. 728; Boston & Albany

R. Co. v. O'Reilly, 158 U. S. 334, 336, 15 Sup. Ct. 830, 39 L. Ed. 1006; Central Coal & Coke Co. v. Hartman, 49 C. C. A. 244, 111 Fed. 96; Chicago & Northwestern R. Co. v. De Clow, 61 C. C. A. 34, 124 Fed. 142.

Because the evidence conclusively established that the father had lost his legal right to the services and earnings of the son during his minority, and because, apart from this legal right, there was no substantial evidence of a reasonable expectation of pecuniary benefit to the father from a continuance of the life of the son, the instruction limiting the recovery to nominal damages should have been given. Atchison, Topeka & San Fé R. Co. v. Weber, 33 Kan. 543, 551, 6 Pac. 877, 52 Am. Rep. 543; Coal Co. v. Limb, 47 Kan. 469, 471, 28 Pac. 181.

By the common law an adult child is under no legal obligation to support either parent, but by statute the state of Minnesota imposes an obligation upon children, if of sufficient ability, to support dependent parents residing in that state. Gen. St. 1894, §§ 1951, 1952. No reference to this statute, or claim under it, seems to have been made or considered in the court below, and none has been made in this court; nor has it been claimed that the father was a resident of Minnesota at the time of the son's death. Therefore the effect of the statute in a case to which it would be applicable has not been considered.

The judgment is reversed, with a direction to grant a new trial.

HOOK, Circuit Judge (specially concurring). I concur in the reversal of the judgment in this case upon the ground that, being influenced by the evidence and the rulings of the court, the jury probably included in their award of damages the pecuniary loss of others than the next of kin, and that it was not made sufficiently clear to them that they should not do so.