# WALTER TODD v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 26, 1916.

Nos. 19,701—(105).

**Negligence — directed verdict proper.**

> The evidence examined and *held* insufficient to make defendant's alleged negligence an issue for the jury, and hence the court did not err in directing a verdict for defendant.

Action in the district court for Ramsey county by plaintiff minor to recovered $15,000 for personal injury received in 1912 when plaintiff minor was about 5½ years of age. The case was tried before Michael, J., who when plaintiff rested granted defendant's motion to direct a verdict for it upon the ground that plaintiff had wholly failed to prove the allegations of his complaint. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Samuel A. Anderson,* for appellant.

*M. L. Countryman* and *A. L. Janes,* for respondent.

HOLT, J.

At the close of the testimony the court directed the jury to return a verdict for defendant. This appeal is from the order denying a new trial.

It is urged that an inference of negligence is permissible from these facts which the jury might have found to exist, viz: On August 20, 1912, at the small village of Grand Harbor, North Dakota, plaintiff, then about 5 years old, his brother Raymond seven and a half years, and another boy, whose age is not disclosed, were playing or idling upon a public street or highway at or near where it is crossed by defendant's railroad tracks, such street being about 500 feet east of the depot; that a flagman from defendant's work train was then at this crossing and an

[1] Reported in 157 N. W. 1080.

Note.—As to liability of railroad company for injuries to children upon track, see note in 25 L.R.A. 784.

east bound freight train had just pulled in, the front thereof extending past the crossing to the east, and the rear reaching some distance west of the depot and standing on the east bound main track, being the most southerly of the four tracks at this station; that the children asked the flagman for a ride on the train, which he told them could not be had; that he took no further precaution to protect the children from danger, but started away in a westerly direction; that, some little time after the flagman left, the boys also went west to a place about opposite or a little west of the depot; that here the man in charge of a grain elevator, just north of the tracks, noticed the boys sitting on the rails of the third track from the south and told them to leave the yard, but they resented his interference—this man was not in the service of defendant—that the boys then went into the open box car standing on the most northerly track and waited until the freight train was starting east, when they ran out to the train and clambered on, and, as they came to the crossing mentioned, they dropped from the side ladders to which they were clinging, but plaintiff fell or stumbled, his foot came under the wheels with the result that the leg was amputated a short distance above the ankle. The flagman was not one stationed at the street crossing, but was connected with a work train engaged some miles east of Grand Harbor, and his duty seems to have been to flag trains coming from the west and hold them at the station until the work train could pull in from the east so as to give the east bound trains a clear track. There is nothing in the evidence to indicate that this flagman knew that the boys came to the open box car or its vicinity, or saw them when they boarded the freight, or that any of defendant's employees, either those on the freight or those in charge of the work train which had just pulled in as the freight train started east, saw the boys in the yard or had any knowledge of their presence until after plaintiff fell. It is entirely clear from the foregoing that, if any negligence is to be imputed to defendant, it must be predicated upon what the flagman did or omitted to do with respect to the boys' safety after he saw them at the street crossing. This rests solely upon the testimony of Raymond Todd, plaintiff's brother, who at the age of 10 relates what occurred when he was 7½ years old. As might be expected, the testimony, given by such a youthful witness concerning events so far in the past, is in many details contradictory; but, rejecting

that which clearly exculpates the flagman from all semblance of blame, the above is what appellant must depend on to sustain the charge of negligence. But, even so, with all the parts of Raymond's testimony unfavorable to plaintiff's cause of action eliminated and only those portions most favorable retained, we cannot find a question of negligence to go to the jury. So taking Raymond's story, it appears that the boys visited with the flagman at the street crossing for about half an hour, and remained there about 15 minutes longer after the flagman went west, then they also went west to a place near the elevator where were four parallel railroad tracks. Assuming the boy's estimate of time to be wide of the mark, still some time elapsed between the flagman's leaving the street crossing and that of the boys. The flagman's leaving had no connection with the boys going up toward the depot. When he left, the boys were in the public street or highway where they had a right to be. They were told that they could not have a ride on the cars, and there was no indication from them that they harbored an intention to disobey or to wander down among the tracks some two blocks away. The flagman presumably had his duties to attend to and could not be expected to stay around and watch the boys, especially in view of the fact that at least one of them was of an age when he would be expected to care for both himself and the others to quite an extent. To the suggestion that the flagman should have ordered the boys to leave the vicinity of the train, the record answers that such order the boys received from the elevator man, but it was not heeded, and it cannot be assumed that the direction of the flagman would have been more persuasive. This is not a case where a child of tender years is left in a place of great danger, like the one where a 6 year-old was permitted to get up on a horse-power and drive, surrounded by moving machinery, as in Gunderson v. Northwestern Ele. Co. 47 Minn. 161, 49 N. W. 694; nor like Hepfel v. St. Paul, M. & M. Ry. Co. 49 Minn. 263, 51 N. W. 1049, where the jury could find that the man in charge of the movements of a train knew that a young girl was hanging onto it, and was in danger of being struck by a pile of lumber close to the track; nor are the circumstances like those in Devereaux v. Thornton, 4 Ohio Decisions, 449, where a 4½ year old child had strayed from home and got into a large railroad yard, and was observed by defendant's employees about railroad cars that were being shunted into a scale house to be

weighed, and it was held to be a proper question for the jury to say whether due care on the part of the employees who saw the child there and knew that it had not sufficient understanding to appreciate the risk arising from moving about in a place where cars stopped and started with frequency. In this case, even if it could be said that the flagman should have driven the boys from the crossing, it cannot in reason be said that his omission to do so was the proximate cause of the accident which occurred quite a while after as a result of plaintiff boarding a car about two blocks away from the crossing.

We have assumed that when the flagman saw the children the freight train was already there extending over the crossing, Raymond having so stated at one point in his testimony. But we think the only permissible inference from the entire record is that the time the flagman saw the boys at the crossing was prior to the arrival of the freight train, and it is most likely was several hours before. No useful purpose would be served by a further discussion of these matters, for under no view of the testimony can it be said that either the negligence of the flagman or of any other servant of defendant has been made to appear in any manner whatever as the proximate cause of plaintiff's misfortune.

Order affirmed.