ALOIS DRIMEL v. UNION POWER COMPANY AND ANOTHER.[1]

January 4, 1918.

No. 20,638.

**Electricity — break in line — question of negligence for the jury.**

1. The plaintiff's intestate, a child between 5 and 6 years old, was killed by coming in contact with a wire of a fence which had been electrified by a live wire of the defendant, on one of its transmission lines, which broke and fell upon it. The wire broke at 4:30 in the morning and the plaintiff's intestate was killed about 8:30. Assuming that the break was caused by lightning, and therefore that the defendant was not responsible for it, it was a question of fact for the jury whether the defendant, having notice at 4:30, by means of instruments in its plant provided for such purpose, of disturbances on its line, and of the probable breaking of two wires, was negligent in failing sooner to locate the break and prevent harm coming from it.

[1] Reported in 165 N. W. 1058.

**Same — charge to jury.**

> 2. There was no error in not charging that the break was caused by lightning.

**Same — request to charge.**

> 3. The general charge embodied the substance of the one requested by the defendant as to when it received actual notice of the break and there was no error in its refusal.

**Negligence of parents.**

> 4. The evidence did not show, as a matter of law, that the parents of the child, who are the sole beneficiaries of this action, were negligent.

**Damages not excessive.**

> 5. The verdict was for $4,000 and was reduced by the trial court to $3,400. It is *held* not excessive.

Action in the district court for Stearns county by the administrator of the estate of Giesela Drimel, deceased, to recover $7,500 for the death of his intestate. The answer among other matters alleged that an accident occurred to defendants' electric line, which was caused by a bolt of lightning striking and shattering one of the insulators upon one of the poles, thereby causing the dropping of one of the wires from the pole; that the dropping of the wire was not caused by any lack of care of defendants, nor by reason of any improper equipment or appliances in connection with defendants' system, nor was it caused through any lack of inspection of the system and equipment, but solely through an act of God; that immediately upon the discovery of the accident defendants shut off the power at the plant in the city of St. Cloud, and immediately removed all danger to persons or property by reason of said accident to its pole and wire; that the parents of decedent minor neglected and failed to advise her of the danger and proximately caused the injury in not advising her of the danger and in not controlling her and keeping her away from contact with the wires. The case was tried before Nye, J., who denied defendants' motion for a directed verdict, and a jury which returned a verdict of $4,000. Defendants' motion for judgment notwithstanding the verdict was denied, and their motion for a new trial was granted unless plaintiff consented to a reduction of the verdict

to $3,400. From the order denying their alternative motion, defendants appealed. Affirmed.

*J. D. Sullivan* and *Joseph B. Himsl,* for appellants.

*James J. Quigley* and *W. F. Donohue,* for respondent.

DIBELL, C.

Action to recover for death by wrongful act. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

1. The defendant operates an electric light and power plant at St. Cloud. One transmission line extends to the southwest through the village of Richmond 20 miles away. The current is carried on overhead wires along public highways. The line has three wires and carries a 16,500 voltage. In the early morning of July 25, 1916, one of the wires near Richmond broke. One end fell across a wire fence along the road and electrified the wires. The current followed a cross fence leading from the road fence, and at a distance of some 2,000 feet from the break the daughter of the plaintiff, between 5 and 6 years old, came in contact with a wire several hours later and was electrocuted.

There was evidence that the break was caused by a bolt of lightning. If so the defendant, if there was no accompanying or subsequent negligence on its part, was not liable. Assuming that the lightning caused the break, the plaintiff claims that the defendant was negligent in not sooner locating the break and taking such action as would have prevented the killing of the child.

In the power plant was an instrument called a current breaker. At 4:30 in the morning it "threw out." This indicated a serious disturbance on the line. To those experienced in electrical plants it meant that there were likely two wires down. One down wire might but usually would not bring this result. The night operator telephoned the superintendent. He at once took his automobile, got two linemen, and started in search of the trouble. He went along the line several miles until he came to the branch going north to St. Joe. He followed the branch until he found a wire down and a resultant ground a mile south of the village. He repaired it and returned to St. Cloud about 7:30 and went about other work, first sending two men with an automobile to the west to patrol

the line, that is, to go along the line and look for trouble. There had been 'an electrical storm the night before and it was customary to patrol after such a storm. There was no such active search maintained for a down wire as resulted in the discovery of the one near St. Joe. The voltmeter and other instruments in the plant continued to warn of disturbances on the line. At about 8:50 the company's representative at Richmond, having been informed of the ground a short distance out, telephoned the plant and the current was at once turned off. This was shortly after the girl was killed. It was the opinion of the defendants' experts that the Richmond wire and the St. Joe wire were down 'at 4:30 and caused the current breaker to throw out at that time. Just what information the night operator gave the superintendent is not shown. It is not important. Whatever information the current breaker disclosed the company had. This information suggested two down wires at 4:30. The search resulted in finding one near St. Joe. It was not continued with the same active diligence.

The principle of law applicable is not in doubt. The company was not an insurer. The measure of its duty was the exercise of ordinary care. It was using a dangerous agency. If not controlled and guarded it might do great injury. The amount of care required to constitute ordinary care under such circumstances is care commensurate with reasonably apprehended dangers and risks. Musolf v. Duluth Edison Electric Co. 108 Minn. 369, 122 N. W. 499, 24 L. R. A. (N. S.) 451; Gilbert v. Duluth General Electric Co. 93 Minn. 99, 100 N. W. 653, 106 Am. St. 430. The break was apparent on casual observation. It was not hidden. Fence posts were burning 'along the fence towards the plaintiff's house. The line was along a much traveled highway through a thickly settled farming community. It could be quickly reached. The jury was justified in concluding that with all the information the defendant had at 4:30 in the morning and from then on it was its duty to exercise very 'active and persistent diligence until it located the two grounds or found that there was but one; that it did. not maintain a sufficiently active search after discovering the one at St. Joe; and that it failed in the exercise of the ordinary care which the situation demanded. The evidence sustains the finding of negligence.

2. The defendant complains that the court did not charge that a bolt of lightning caused the break. The evidence is persuasive that it did. However, there was evidence, opinion in character, that it came from a mechanical strain. There was no error in the charge in this respect. Besides the case was not put to the jury upon the theory that there was actionable negligence in the defendant in respect of the breaking of the wire.

3. The defendant urges that the court erred in refusing to charge as requested that "there is no evidence in this case that defendant company had actual notice of the damage to its line at the point referred to in this case, near Richmond, until notified of it by Mr. O'Ryan." O'Ryan was the one who notified Schwankl, the defendant's agent at Richmond, who telephoned the plant about 8:50. The court charged that "there is no proof that Mr. Schwankl, of Richmond, received actual notice of the breakage of this wire until he was notified by Mr. O'Ryan." It was not claimed that the company had actual notice of the ground near Richmond except as it came to and through Schwankl, and immediately upon getting it he telephoned. The instruction was the substantial equivalent of that asked and was sufficient.

4. The evidence was not such as to require a finding that the plaintiff and his wife, who are the sole beneficiaries, were negligent in respect of the care of the child. We assume as we have frequently done that such negligence would bar a recovery. See Kokesh v. Price, 136 Minn. 304, 161 N. W. 715; 2 Illinois Law Rev. 487.

The plaintiff's house was about a half mile, measured at right angles, from the place where the wire broke. The child was killed about 500 feet from the house in a lane leading from the public road passing the house. About six o'clock in the morning the plaintiff, when getting his cows, saw that a wire was down and that some of the fence posts were burning. He told his wife. They purposely kept information from the children. It is likely that they feared they would be attracted to the place and that there was danger. About 7 o'clock the plaintiff went to Richmond. The children were playing about the house. Their mother was engaged about her household work. She did not notice their leaving. Apparently they went out on the public highway in anticipation of their father's return, and coming to the lane were attracted by the burning

fence posts estimated to be 238 feet down the lane, and went there. Upon such facts negligence of the parents cannot be predicated as a matter of law. See Mattson v. Minnesota & N. W. R. Co. 98 Minn. 296, 108 N. W. 517; Gunderson v. Northwestern Ele. Co. 47 Minn. 161, 49 N. W. 694.

5. The verdict was for $4,000 and was conditionally reduced to $3,400 by the trial court and the plaintiff accepted the reduction. It is claimed that it is excessive. The largest verdict for the death of a child of like age which we find sustained in this state was for $3,000. Such a verdict was upheld in O'Malley v. St. Paul, M. & M. Ry. Co. 43 Minn. 289, 44 N. W. 440. The damages were characterized as "large." In Gunderson v. Northwestern Ele. Co. 47 Minn. 161, 49 N. W. 694, the verdict was for $5,000 and was reduced to $3,000. It was held so excessive as to require a new trial. These cases were decided more than 25 years ago. Conditions have changed. The damages under consideration, since they are based solely on pecuniary loss, are, under our decisions, liberal. We cannot say that they are so excessive as to require a new trial.

Order affirmed.